## CLENDENNIN v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. April 28, 1920.)

### No. 1766.

**Internal revenue ⬤⟹39, 40—Furnisher of liquor to be illegally sold guilty of participation.**

One who furnishes liquor to another, who has not paid the special tax as a retail liquor dealer, with knowledge and intent that the latter should sell the same at retail, is guilty of participation in the offense, although his purpose was to entrap the other for violation of a state law.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Criminal prosecution by the United States against Rufus Clendennin. Judgment of conviction, and defendant brings error. Affirmed.

A. M. Belcher and T. C. Townsend, both of Charleston, W. Va., for plaintiff in error.

J. N. Kenna, Asst. U. S. Atty., of Charleston, W. Va. (L. H. Kelly, U. S. Atty., of Gassaway, W. Va., on the brief), for the United States.

Before KNAPP and WOODS, Circuit Judges, and WATKINS, District Judge.

WOODS, Circuit Judge. The defendant was convicted of carrying on the business of a retail liquor dealer without having paid the special tax. The main question here is whether the District Judge erred when he charged the jury in effect that, if they believed either the testimony offered by the government or that offered by the defendant, the offense charged was made out.

These facts are not in dispute: Under the authority of a statute of West Virginia the defendant was employed as an officer to enforce the state prohibition law, and was placed under the control of the prosecuting attorney for Kanawha county. From time to time he seized considerable quantities of liquor, and arrested a number of persons for violation of the prohibition law. Most of the liquor seized by him was turned over to Mr. Littlepage, the prosecuting attorney, and kept in a vault in his office. Early in August, 1918, the defendant had in his own office some packages of liquor seized by him. About 2 o'clock on the morning of the 3d or 4th of August, 1918, Jim Nutter, a notorious illicit liquor dealer, went to the office of the defendant and obtained from him three packages of whisky in bottles, containing altogether six gallons. By order of the prosecuting attorney, who from the window of his own office had witnessed the delivery of the

whisky, it was seized in an automobile in which Nutter was conveying it before he had an opportunity to sell it.

The issue of fact between the government and the defense was as to the nature and purpose of this transaction. On behalf of the government, Nutter testified that he had several times bought liquor from the defendant, and that on this occasion he paid him at the rate of $3 a pint, $140 for the lot; that at other times in the summer of 1918 he had bought a case or two.

The defendant testified that his sole purpose in turning over the six-gallon lot to Nutter was to entrap him and convict him of violating the prohibition law of West Virginia; that to this end he had an understanding with Nutter that he should come to his room at about 2 o'clock in the morning and get the whisky; that Nutter paid nothing for it; that he did this with the full understanding that Nutter was an illicit retail liquor dealer, and would sell or offer the liquor for sale in violation of the state and federal laws. He testified, further, that he had an arrangement with the owners of certain places where he expected Nutter to sell the whisky that he would be informed when Nutter appeared to sell it, so that he could have him arrested under a warrant charging violation of the West Virginia statute. It does not appear from his testimony that he made any explanation to Nutter of his reasons for giving him the whisky.

It is evident that, if the jury believed Nutter's testimony that he had not only bought six gallons of whisky on this occasion from the defendant, but on other occasions in the same summer had bought as small quantities as a case or two, they would necessarily infer that defendant was guilty of retailing.

On the other hand, if the jury rejected the entire testimony offered on the part of the government, and accepted the testimony on the part of the defendant, they would necessarily infer that the defendant was guilty of participating in the business of a retail liquor dealer without a license. If he delivered to Nutter six gallons of whisky, knowing, as he says he did, that Nutter was engaged in retailing liquor without having paid the special tax, with the expectation and design, which ne said he had, that Nutter was to use it in the prosecution of that business, he became an associate and participant with Nutter in the retail business, in violation of the federal law. Criminal intent was not necessary. United States v. Barnhardt, Fed. Cas. No. 14,526; United States v. Rectifying Establishment, Fed. Cas. No. 16,131; State v. Downs, 116 N. C. 1064, 21 S. E. 689.

Co-operation with Nutter made the defendant equally guilty with him. Wortham v. State, 80 Miss. 205, 32 South. 50. He could not escape the penalty of the federal law on the ground that his intention in the transaction was to promote the enforcement of the state laws. Even if he had acted under express official authority from the state of West Virginia, he could not deal in liquor, directly or indirectly, either alone or in conjunction with Nutter, without paying the special tax required by the federal statute. So it was expressly decided in South

Carolina v. United States, 199 U. S. 437, 26 Sup. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737. We know of no principle of the law of entrapment, and we can find no authority, which sustains the position that the judicial power extends to granting immunity to a state police officer who, without the sanction of federal authority, sells liquor to a dealer or participates in the dealer's business, for the purpose of convicting him of violating a state law. Such an unlawful practice would be productive of great abuse, and add to the difficulties of enforcing the federal revenue law.

In some cases this conclusion would result in hardship, but the courts cannot disregard on that ground the clear terms of the statute and its construction by the Supreme Court. Relief would have to come, either from the clemency of the judge in imposing sentence, or from the pardoning power. No hardship results in this case, for the testimony is convincing that the defendant sold the six gallons of liquor to Nutter for his own profit, and thus actually aided and abetted Nutter in his business of an illicit retail liquor dealer, and so was equally guilty with him, morally as well as legally. His story that he turned over the liquor to Nutter as a gift, and that Nutter unsuspiciously received it, the defendant having the intention to have Nutter arrested for the resale, even if it constituted a legal defense, is altogether incredible.

Our conclusion is that the District Judge took the correct view of the legal effect of the evidence, and that the conviction was just.

Affirmed.