### McNUTT v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 15, 1920.)

No. 5539.

1. **Criminal law ☞1030(1), 1048, 1129(1)—Appellate court may review, although errors are informally presented.**

While it is the general rule that objections and exceptions are necessary to entitle a party to review the judgment, in criminal cases, where the life or liberty of a citizen is at stake, the courts of the United States, in the exercise of a sound discretion, may notice and relieve from radical errors in the trial, which appear to have been seriously prejudicial to the rights of defendant, although the questions they present were not properly raised or preserved by objection, exception, request, or assignment of error.

2. **Criminal law ☞656(5)—Court's remarks as to witness' inconsistency held prejudicial.**

The action of a court in reminding a witness for the prosecution, who made a statement favorable to defendant and not in agreement with a previous affidavit he had signed, of the penalty for perjury, on which the witness changed his testimony, in the presence of other witnesses and the jury, held so calculated to intimidate other witnesses and to prejudice the jury as to deprive defendant of the fair and impartial trial to which he was entitled.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Criminal law ⬉⟹658—Committing defendant's witness for perjury in presence of jury prejudicial error.**

The commitment for perjury of, or the direction to file an information for perjury against, a defendant or one of his witnesses, in the presence of the jury during the trial of a criminal case against him, is prejudicial error.

**4. Internal revenue ⬉⟹47—Evidence held insufficient to show carrying on business of retail liquor dealer without paying tax.**

A conviction for carrying on the business of retail liquor dealer, without paying the special tax, *held* not sustained, where it did not appear that defendant had any appliances of a liquor dealer or held himself out as such by offering it for sale, and the only evidence of a sale was that of a witness who testified to buying liquor, of a kind not stated, on two occasions at the boarding house kept by defendant, but that it was dark and he was not sure from whom he obtained it.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Criminal prosecution by the United States against W. C. McNutt. Judgment of conviction, and defendant brings error. Reversed.

M. E. Dunaway, of Little Rock, Ark. (Gardner K. Oliphint, of Little Rock, Ark., on the brief), for plaintiff in error.

June P. Wooten, U. S. Atty., of Little Rock, Ark. (R. W. Wilson, Asst. U. S. Atty., of Monticello, Ark., on the brief), for the United States.

Before SANBORN and CARLAND, Circuit Judges.

SANBORN, Circuit Judge. The writ in this case charges errors in the trial of the defendant below for carrying on the business of a retail liquor dealer without having paid the special tax of $25, as required by law. He was convicted and sentenced to pay a fine of $100, and to be imprisoned in the penitentiary for 18 months.

When his case was called for trial, he entered the plea of not guilty. He was then asked if he had counsel to represent him, and he answered that he had not. He was next asked if he desired the court to appoint counsel to represent him, to which he replied that he was not guilty of the offense charged against him, that he did not think it was necessary for him to have counsel to represent him in the case, and that he did not wish the court to appoint counsel for him. Thereupon he was tried without counsel. He did not make any objections or take any exceptions to any testimony or to any rulings of the court, he did not cross-examine any of the witnesses, nor did he take any part in the trial, except that he took the stand, was duly sworn, and testified that he never sold any whisky or intoxicating liquor to Roy Paine, a witness for the government, or to any one else, but that he did bring a carload of whisky into the city of Little Rock with the intent to sell it, but that he never sold any, because he was arrested and the whisky taken from him.

[1] After the defendant's trial and conviction he evidently procured the services of Mr. Dunaway as his counsel, who prepared an assign-

ment of errors, sued out the writ of error, and briefed and argued his case for him in this court The United States attorney meets his brief and argument with the objection that because there were no objections or exceptions to any of the evidence, or any of the rulings of the court at the trial, there is nothing here for this court to consider or review and the judgment must be affirmed. Such is undoubtedly the general rule, but there is an exception to it as firmly established as the rule itself. It is that in criminal cases, where the life or liberty of the citizen is at stake, the courts of the United States in the exercise of a sound discretion, may notice and relieve from radical errors in the trial which appear to have been seriously prejudicial to the rights of the defendant, although the questions they present were not properly raised or preserved by objection, exception, request, or assignment of error. Wiborg v. United States, 163 U. S. 632, 658, 16 Sup. Ct. 1127, 41 L. Ed. 289; Weems v. United States, 217 U. S. 349, 363, 30 Sup. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705; Sykes v. United States, 204 Fed. 909, 914, 123 C. C. A. 205, 210; August v. United States, 257 Fed. 388, 392, 168 C. C. A. 428, 432; Fielder v. United States, 227 Fed. 832, 833, 142 C. C. A. 356, 357. An examination of the record of the trial of the defendant has persuaded that this is one of the cases that fall under this exception. That record discloses this state of facts:

[2] The indictment alleged that on the 1st day of August, 1918, the defendant was carrying on the business of a retail liquor dealer in the Western Division of the Eastern District of Arkansas, without having paid the special tax imposed by the acts of Congress. The trial was on October 29, 1919. The United States attorney called as a witness for the government Roy Paine, and asked him how long he had known the defendant, and he answered, "About 3 months." Then the record reads in this way:

"Q. Are you not mistaken about that? A. I think not.

"Q. Do you mean from now, or from the time of the finding of the indictment? A. I mean about 3 months ago from now I met the defendant.

"Q. Is this your affidavit and signature (handing to the witness a certain paper or writing)? A. It is my signature.

"Q. Did you not state in that affidavit that you had known the defendant 15 months at that time, which was more than 6 months ago? A. I signed that paper, but I did not do the writing that is in it; cannot be positive whether I made all the statements contained therein. .

"The Court: Do you know what the punishment is for perjury (addressing the witnes Paine)?

"Witness: I think I do, your honor.

"The Court: Well, when were you telling the truth, at the time you made that affidavit (referring to the paper or affidavit which had previously been handed the witness by the district attorney), or are you telling the truth now? A. I knew him 15 months ago, before the indictment was returned, and the statement in the affidavit is correct."

The prosecutor then took the witness, asked him if he ever bought any liquor of the defendant, and he answered that he did not know whether he bought it of him or not; that he bought some twice, a pint each time, at the defendant's house, which was a large boarding house; that he went into the hallway of that house at night in the dark and bought it from some one; that he could not say for sure

whether it was the defendant he bought from or not, but that he thought it was the defendant, but that he was not absolutely positive that it was he. This concluded the testimony of Mr. Paine, whereupon, in the presence of the jury, the court said:

"Mr. District Attorney, I think you had better file an information against the witness Roy Paine, charging him with perjury; the bond will be $5,000."

And the district attorney replied:

"Very well, your honor; that will be done."

There was no other evidence in this case of the sale of any liquor by the defendant, or of the holding out or offering to sell any liquor to any one by the defendant, or of the carrying on of the business of selling liquor by him. The prosecutor called another witness on this subject of the sale of liquor by the defendant, who testified that he had known him pretty well for many years, but that he had never bought any liquor of him, and had never known of any one else purchasing any liquor from him. The prosecutor then proved by revenue officers that one night in August, 1918, when the defendant was away from home, they commenced a search of the defendant's house, and found five or six pints of whisky in an old trunk, that they had a tip that the defendant was coming in with a load of whisky that night, and the next morning they searched again and found 40 pints more. The defendant testified that he had never sold any whisky to any one as has been stated, and this was all the material testimony in the case.

The purpose of the review by appellate courts of trials in the courts below is to ascertain whether, according to recognized rules of procedure, those trials were fair and impartial, and if in a criminal case there is serious doubt about it to make sure by another trial that the accused has a trial that is fair and impartial. If this purpose is to be really and practically accomplished, both trial and appellate courts must strive to find out the actual effect upon the jury of the action of counsel for the parties and of the court which tries the case. What was the natural and probable effect upon the witnesses and jurors in this case of the court's treatment of the witness Paine? Was it not to impress the former with the imminent danger to them of arrest for perjury, if they failed to answer questions as the prosecutor desired, and to indicate to the jury that the court thought little attention ought to be paid to evidence that did not tend to convict the defendant? Must it not have had the effect to have strongly impressed the jury with the view that the court was convinced of the guilt of the defendant?

[3] The more this record has been studied and considered, the more difficult it has become to resist the conviction that these questions ought to be answered in the affirmative, to resist the conviction that the course pursued by the court, doubtless inadvertently in the speedy trial of what perhaps seemed an unimportant case, was very likely to intimidate witnesses subsequently called, to prejudice jurors against the defendant, and to lead them to think that the court was strongly impressed with the view of the defendant's guilt. While there is some conflict among the decisions, the great weight of authority is that the

commitment for perjury of, or the direction to file an information for perjury against, the defendant or one of his witnesses in the presence of the jury during the trial of a criminal case against him, is a fatal error. Rutherford v. United States, 258 Fed. 855, 860, 863, 169 C. C. A. 575, 580, 583; Reed v. State, 5 Okl. Cr. 365, 114 Pac. 1114; Glover v. United States, 147 Fed. 426, 427, 429, 77 C. C. A. 450, 451, 453, 8 Ann. Cas. 1184; State v. Hughes, 33 Kan. 23, 26, 27, 5 Pac. 381; Martin v. State, 130 Ark. 442, 443, 197 S. W. 861; Brandon v. State, 75 Miss. 904, 23 South. 517, 518; Keiser et al. v. Yandes, 45 Ind. 175, 177; State v. Swink, 151 N. C. 726, 66 S. E. 448, 449; State v. Primmer, 69 Wash. 400, 125 Pac. 159.

If the thought suggests itself that Paine was not the defendant's witness, the answer is that it was because, though called by the prosecutor, he commenced to testify to a fact favorable to the defendant that he was taken in hand by the court and at the end of his testimony directed to be committed for perjury. There is nothing in this record to show that the affidavit which was presented to this witness was more truthful in its statements than his testimony under oath in the presence of the court and jury would have been, if he had testified in the ordinary way, and been permitted to state as he commenced to do, why he could not be positive whether he made all the statements contained in it. It is not impossible that the statements in that affidavit might have been written down without his understanding them, or that he might have been improperly influenced by persuasion or fear to make them. Whatever the facts regarding this affidavit may have been, it is not possible to resist the conclusion, in view of the absence of counsel for the defendant in this trial and the record which has been recited, that the trial lacked something of that fairness and impartiality to which the defendant was entitled under the Constitution and the laws of this land. In Rutherford v. United States, 258 Fed. 862, 863, 169 C. C. A. 575, wherein the court unduly pressed a witness to testify as it thought the witness ought to testify, and committed him for contempt of court during the trial in the presence of the jury, the Supreme Court discharged the witness on writ of habeas corpus (In re Hudgings, 249 U. S. 378, 39 Sup. Ct. 337, 63 L. Ed. 656, decided April 14, 1919), and the Circuit Court of Appeals of the Second Circuit reversed the judgment against the defendants, with the remark that they did not have the temperate and impartial trial to which they were entitled.

[4] Again, this is not a prosecution for selling liquor; it is a prosecution for carrying on the business of a retail liquor dealer without having paid the special tax required by law under the following provisions of the acts of Congress:

"That retail dealers in liquors shall pay twenty-five dollars. Every person who sells, or offers for sale, foreign or domestic distilled spirits, wines, or malt liquors, otherwise than as hereinafter provided in less quantities than five wine gallons at the same time shall be regarded as a retail dealer in liquors." U. S. Comp. St. § 5973.

"Every person who carries on the business of a * * * retail liquor dealer * * * without having paid the special tax as required by law, shall, for every such offense, be fined," etc. U. S. Comp. St. § 5965.

"The offense," says the Supreme Court, "does not consist in selling or offering for sale to a particular person distilled spirits, etc., in less quantities than five gallons at one time, but in carrying this on as a business; in other words, in the defendant holding himself out to the public as selling or offering for sale, etc." Ledbetter v. United States, 170 U. S. 606, 610, 18 Sup. Ct. 774, 775 (42 L. Ed. 1162).

One or two sales of liquor are not sufficient to convict of carrying on the business of a retail liquor dealer without having paid the special tax when made by one having none of the appliances or surroundings of retail liquor dealers, to an intimate acquaintance or friend out of the seller's private stock not held for or offered to purchasers who should apply for it. United States v. Jackson, 26 Fed. Cas. 556, No. 15,455; United States v. Rennecke (D. C.) 28 Fed. 847; United States v. Bonham (D. C.) 31 Fed. 808, 809; Bailey v. United States, 259 Fed. 88, 89, 91, 170 C. C. A. 156, 157, 159. Under these Acts of Congress there was no substantial evidence at the trial below in this case that the defendant was guilty of carrying on the business of a retail liquor dealer. There was no evidence of the times when the two purchases of liquor were made to which Paine testified; there was no evidence that the liquor he testified he purchased was either foreign or domestic distilled spirits or wines or malt liquors. The legal presumption is that it was none of these because the defendant is to be presumed to be innocent until he has been proved to be guilty, and one who carries on the business of selling other liquors than distilled spirits, wines, or malt liquors, is not a retail liquor dealer within the terms of the statutes cited. There was no evidence that the defendant had any of the usual appliances and accommodations of a retail liquor dealer, that he held himself out as a dealer or that he had or offered distilled spirits, wines, or malt liquors for sale to those who might apply for it.

The only witness who testified to the purchases was denounced by the court as a perjurer. The defendant testified that he had never made any sale of any whisky or any other intoxicating liquors to Paine or to any one else, and the other witness whom the prosecutor called to prove the carrying on of the business by the defendant testified that he had known him pretty well all the time for years, and he had never purchased or known of any one purchasing any liquor from him. In this state of the case the evidence here was too slight and unsubstantial to sustain a judgment which deprives the defendant of his liberty for a year and a half and imposes on him a substantial fine.

For the reasons which have now been stated, the judgment below must be reversed, and the case must be remanded to the court below, with directions to grant a new trial; and it is so ordered.