## TAYLOR et al. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
May 5, 1927.

No. 7539.

**1. Criminal law ⟨⟩1144(3)—After conviction, it will be presumed that motions to quash indictment and for bill of particulars were overruled, where rulings are not shown by record or bill of exceptions.**

After conviction for violating Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), Circuit Court of Appeals will presume that trial court overruled motions to quash indictment and motions for bill of particulars, where court's rulings do not appear in record or by bill of exceptions.

**2. Indictment and information ⟨⟩65—Indictment for violating Anti-Narcotic Act need not set out how many sales were made to constitute defendants dealers (Comp. St. §§ 6287g–6287q).**

In prosecution for violating Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), indictment need not set out how many sales were made to constitute defendants dealers, since question whether they were dealers is one of fact, to be established by proof at trial.

**3. Poisons ⟨⟩4—Possession by unregistered "dealer" in narcotics, who has not paid tax, is offense (Comp. St. § 6287n).**

Possession by dealer in narcotics, who is not registered and has not paid tax, is viola-

tion of Act Dec. 17, 1914, § 8 (Comp. St. § 6287n); "dealer" being one who sells narcotics promiscuously, who is ready and willing to sell to any one applying to purchase, if unaware that they are officers or undercover men.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dealer.]

**4. Indictment and information ⟨⟩125(20)—Count of indictment charging possession of narcotics by unregistered dealers without paying tax held not duplicitous (Anti-Narcotic Act 1914, § 1, and amendatory acts of 1919 and 1921 [Comp. St. § 6287g]).**

Count of indictment charging possession of narcotics by defendants who are dealers without having registered and paid tax held not duplicitous, since it charges violation of Anti-Narcotic Act 1914, § 1, as well as amendatory acts of 1919 and 1921 (Comp. St. § 6287g).

**5. Indictment and information ⟨⟩125(47)—Count charging purchase of narcotics from unstamped package held not duplicitous.**

Count of indictment charging purchase of narcotics from unstamped package, and no other offense, is not duplicitous.

**6. Criminal law ⟨⟩1167(2)—Reviewing court need not pass on demurrer to count on which defendant was acquitted.**

Circuit Court of Appeals is not required to pass on demurrer to count of indictment on which defendant was found not guilty.

**7. Indictment and information ⟨⟩125(4)—Count charging sale of narcotics not on form issued in blank for such purpose by Commissioner of Internal Revenue held not duplicitous.**

Count of indictment charging that defendant made sale of narcotics without written order on order form supplied by Commissioner of Internal Revenue to those authorized to purchase narcotics *held* not duplicitous.

**8. Indictment and information ⟨⟩121(2)—Motions for bills of particulars held properly denied, in prosecution for violating Anti-Narcotic Act (Comp. St. §§ 6287g–6287q).**

Motions for bills of particulars *held* properly denied, in prosecution for violating Anti-Narcotic Act (Comp. St. §§ 6287g–6287q) by being dealers in opium and its derivatives and possessing morphine, selling morphine not on prescribed form, and possessing morphine not in original stamped package, since counts of indictment sufficiently charged violations.

**9. Criminal law ⟨⟩1167(1)—Indictment and information ⟨⟩121(2)—Motion for bill of particulars is in court's discretion, and ruling reversed only for abuse.**

Motion for bill of particulars is within discretion of trial judge, and denial thereof will not be reversed, unless clearly an abuse of discretion.

**10. Poisons ⟨⟩4—Defendant, who had registered and paid tax, held not guilty of being dealer in narcotics, possessing morphine without registering and paying tax.**

In prosecution for being dealer in opium and its derivatives and possessing morphine without having registered and paid tax, de-

fendant who had registered and paid tax *held* entitled to directed verdict.

**11. Criminal law ⚖329—In prosecution under Anti-Narcotic Act, defendant must prove he had registered and paid special tax after government's proof of sales (Comp. St. §§ 6287g–6287q).**

In prosecution for violating Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), in which sales by defendant were established by government, burden was on defendant to prove that he had registered and paid special tax, since government is not required to prove a negative, if defendant has in his possession evidence of affirmative.

**12. Poisons ⚖4—One possessing, selling, or purchasing narcotics from package not stamped is guilty of offense (Acts of 1919 and 1921, amending Anti-Narcotic Act (Comp. St. § 6287g]).**

Under acts of 1919 and 1921, amending Anti-Narcotic Act (Comp. St. § 6287g), any person, whether registered or not, is guilty of an offense for having possession, selling, or purchasing narcotics from package not stamped.

**13. Criminal law ⚖1129(2)—Counsel should not repeat assignments of error.**

In preparing case on appeal in criminal prosecution, counsel should not repeat assignments of error.

**14. Poisons ⚖9—Evidence of sales previous to date charged in indictment held admissible to show defendants were narcotic dealers.**

In prosecution for possession of narcotics by dealers without having registered and paid tax, evidence of sales previous to date charged in indictment *held* admissible to show that defendants were dealers, since single sale is not always sufficient.

**15. Witnesses ⚖255(3)—In prosecution for violating Anti-Narcotic Act, government employees may, in testifying, refer to memoranda made immediately after transactions took place (Comp. St. §§ 6287g–6287q).**

In prosecution for violating Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), witnesses who are government employees may, in testifying, refer to memoranda made immediately after transactions took place in order to refresh memory, since it would be practically impossible for officers making daily investigations to remember names, dates, and what took place.

**16. Witnesses ⚖277(2)—In prosecution for violating Anti-Narcotic Act, cross-examination of defendant, who testified to qualifications as pharmacist as to knowledge of ordinary dose of morphine and similar questions held not error (Comp. St. §§ 6287g–6287q).**

In prosecution for violating Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), cross-examination of defendant as to his knowledge of ordinary dose of morphine, number of grains in an ounce, and similar questions, *held* not error, where he testified on direct examination concerning his qualifications as pharmacist.

**17. Witnesses ⚖277(4)—Generally cross-examination of defendant in criminal case must be confined to matters brought out on examination in chief.**

General rule is that, when defendant takes stand in criminal case, he is subject to same rules as any other witness, and cross-examination must be confined to matters brought out on examination in chief.

**18. Poisons ⚖4—It is immaterial whether defendants in prosecution for violating Anti-Narcotic Act acted for themselves or as agents for others (Penal Code, § 332 [Comp. St. § 10506).**

Whether defendants in prosecution for violating Anti-Narcotic Act acted for themselves or as agents of another is immaterial, since one aiding or abetting another in committing offense is principal, in view of Penal Code, § 332 (Comp. St. § 10506).

**19. Criminal law ⚖762(2)—In criminal case, judge of federal court may charge that certain facts are undisputed, where evidence warrants it.**

In criminal prosecution in federal court, it was not error for court to tell jury that certain facts were undisputed, where evidence on issues referred to was undisputed, as against contention that it took from jury question of weight and credibility of evidence.

**20. Criminal law ⚖1186(4)—Error in trial is not reversible, where evidence of guilt is conclusive (Judicial Code, § 269, as amended by Act Feb. 26, 1919 [Comp. St. § 1246]).**

Where evidence of guilt of defendant is conclusive, error committed during trial is not reversible, in view of Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. § 1246).

**21. Poisons ⚖9—Evidence held to support conviction of possessing morphine not in or from original stamped package.**

Evidence *held* sufficient to support conviction for possessing morphine not being in or from original stamped package, where packages which were introduced in evidence were shown not to have been stamped.

**22. Criminal law ⚖942(1)—In prosecution for violating Anti-Narcotic Act, defendants held not entitled to new trial because government witness was subsequently found operating opium den.**

Defendants in prosecution for violating Anti-Narcotic Act *held* not entitled to new trial because government witness was subsequently found operating opium den, where evidence other than that of such witness would have justified conviction.

**23. Criminal law ⚖911, 1156(1)—Granting motion for new trial is discretionary, and reviewable only for clear abuse.**

Granting of motion for new trial is addressed to discretion of trial judge, and only in case of clear abuse of discretion will appellate court review denial thereof.

**24. Witnesses ⬅️256—Accused's counsel held entitled to inspect memorandum used by government's witness in prosecution for violating Anti-Narcotic Act (Comp. St. §§ 6287g–6287q).**

In prosecution for violating Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), in which government's witness referred to memorandum while testifying, counsel for accused *held* entitled to inspect such memorandum.

**25. Criminal law ⬅️1170½(1)—Refusal to allow accused's counsel to inspect memorandum used by government's witness, though error, held not prejudicial.**

In prosecution for violating Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), refusal to allow accused's counsel to inspect memorandum referred to by government's witness, though error, *held* not prejudicial, where use of memorandum was not material.

In Error to the District Court of the United States for the Western District of Missouri; Merrill E. Otis, Judge.

William P. Taylor and another were convicted of violating the Anti-Narcotic Act, and they bring error. Affirmed in part, and reversed in part.

Frank D. Rader and Paul S. Conwell, both of Kansas City, Mo. (Thomas R. Marks, James M. Rader, and W. H. H. Piatt, all of Kansas City, Mo., on the brief), for plaintiffs in error.

Harry L. Thomas, Asst. U. S. Atty., of Kansas City, Mo. (Roscoe C. Patterson, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. The plaintiffs in error, hereafter referred to as the defendants, were charged with Illif J. Harris, Henry Rothman, and Steno Lamento, in three counts of the indictment, with violations of the Anti-Narcotic Act (Comp. St. §§ 6287g–6287q). Lamento entered a plea of guilty, and a severance was granted to Rothman.

Upon a trial, the defendant Harris was found not guilty, the defendant Taylor guilty on all three counts, and the defendant Nichols guilty on the first and third counts and not guilty on the second count. Motions for new trials by both of these defendants were denied, and Taylor sentenced on the first count to three years' imprisonment and a fine of $1,000 on the first count, to three years' imprisonment on each of the second and third counts, the imprisonment on the second and third counts to be concurrent with the imprisonment imposed on the first count. The de-

fendant Nichols was sentenced to three years' imprisonment, and a fine of $1,000 on the first count and imprisonment for three years on the third count, the imprisonment on the third count to be concurrent with that imposed on the first count.

The first count of the indictment charges the defendants with being dealers in opium and its derivatives, being persons required by law to register as such dealers in the office of the internal revenue collector for that district, unlawfully possessed for sale seven ounces of morphine without having registered and without having paid the special tax as such dealers. The second count charges that the defendants, without having registered and paid the special tax as such dealers, sold seven ounces of morphine to one E. H. Staley, not on a form issued in blank for that purpose by the Commissioner of Internal Revenue. The third count charges possession of seven ounces of morphine, the same not being in or from an original stamped package.

[1] Motions to quash each of the counts of the indictment, which were in effect demurrers, and will be so regarded, and also motions for bills of particulars, were filed by the defendants, and by the court evidently overruled, although the record fails to show any action by the court on these motions. Nor does the bill of exceptions show any ruling by the court on them. The only mention of their being overruled is set forth in the assignment of errors. This is ordinarily insufficient, but, as the motions were filed, the court no doubt overruled them. The charges being felonies, we will presume that the court did overrule them. The counsel for the government did not refer to this, either in their briefs or the oral argument. Had defendants' counsel's attention being called to this omission, they would no doubt have been granted leave to perfect the record.

The grounds relied on in the demurrers are:

To the first count, that possession of a small quantity of narcotic drugs does not create the presumption that the possessor is a dealer, and that it is not specific enough. (1) That this count fails to show whether the defendants are charged with violation of the act of 1914, or the amendments to that act of 1919 and 1921. (2) That it is duplicitous, charging three distinct violations of law. (3) That it is not specific enough to advise them what they are called on to meet.

[2, 3] 1. Whether they were dealers is a question of fact, to be established by proof at the trial. It is not necessary to set out in the indictment how many sales were made to con-

stitute one a dealer. It is sufficient if, at the trial, the fact that they had sold narcotics promiscuously, and were ready or willing to sell to any one who applied to purchase, if they were unaware that they were officers or undercover men. Possession by such a dealer, who is not registered, and had not paid the tax, is a violation of section 8 of the Act of December 17, 1914 (section 6287n, U. S. Comp. St. 1916).

[4, 5] 2. Neither the first nor the third counts are duplicitous, as neither of them charges more than one offense. The first count charges possession by defendants, who are dealers, without having registered and paid the tax. This is a violation of section 1 of the original act of 1914, as well as the amendatory acts of 1919 and 1921 (Comp. St. § 6287g). The third count only charges a purchase of narcotics from an unstamped package, and no other offense, and is not duplicitous.

[6, 7] As to the demurrer to the second count, it is unnecessary to pass on it, so far as it refers to the defendant Nichols, as he was found not guilty on that count. The request on behalf of the defendant Taylor for a directed verdict of not guilty on that count was properly denied, as the charge is that he made the sale without a written order on the order form supplied to those authorized to purchase narcotics. Nor is this count duplicitous. Marcelle Smith v. United States (C. C. A.) 17 F. (2d) 723 (opinion filed Feb. 28, 1927); United States v. Noveck, 271 U. S. 201, 203, 46 S. Ct. 476, 70 L. Ed. 904.

[8, 9] 3. Motions for bills of particulars were properly denied. Each of the counts charges the violations as fully as is necessary to enable the defendants to prepare their defense. Aside from this, such a motion is within the discretion of the trial judge, and a denial thereof will not be reversed, unless clearly an abuse of discretion. Hindman v. United States, 292 F. 679 (C. C. A. 6); Arnsheim v. United States, 54 App. D. C. 249, 296 F. 946; Talmadge v. United States (C. C. A.) 4 F. (2d) 378 (C. C. A. 7). There was no abuse of discretion.

[10, 11] The request by the defendant Taylor for a directed verdict of not guilty on the first count should have been sustained, as he had registered and paid the tax as before stated. That of the defendant Nichols was properly denied. There is no evidence that he registered or paid the special tax. The sales having been established by the government, the burden was on the defendant to prove that he had registered and paid the special tax. The government is not required to prove a negative, if the defendant has in his possession the evidence of the affirmative. 2 Chamberlayne on the Law of Evidence, § 983; Bishop on Statutory Crimes, §§ 1051, 1052; 4 Elliott on Evidence, § 3170; Faraone v. United States, 259 F. 507 (C. C. A. 6); McCurry v. United States, 281 F. 532 (C. C. A. 9); Giacolone v. United States, 13 F.(2d) 108 (C. C. A. 9).

[12] As to the third count, it is the settled law that under the amendatory acts of 1919 and 1921, any person, whether registered or not, is guilty of an offense of having possession of, selling, or purchasing narcotics, from a package not stamped. United States v. Wong Sing, 260 U. S. 18, 43 S. Ct. 7, 67 L. Ed. 105; Rossi v. United States, 9 F.(2d) 362 (decided by this court); Hayden v. United States, 284 F. 852 (C. C. A. 5); Perez v. United States, 10 F.(2d) 352 (C. C. A. 9); Reese v. United States, 14 F.(2d) 606 (C. C. A. 6).

The record is very voluminous. A large part of it relates to objections to numerous questions propounded to witnesses for the government. The same objections were repeated and repeated, although the learned trial judge stated a number of times that this is unnecessary, as, having theretofore overruled objections to like questions propounded to other witnesses, such questions would be considered as objected to without further objections. Counsel also insisted on having the record show the arguments made to sustain the objections, after the court had stated that it was unnecessary to incumber the record with them.

[13] There are 92 assignments of error, set out in over 82 pages of the printed record, most of them repeated a number of times. This practice has been condemned by the Supreme Court and this court so many times that there is no reason for counsel to persist in this practice. It places on this court an unnecessary burden of examining these numerous assignments of error and the record, only to find that many of them, and sometimes all, are clearly without merit; the points raised having been decided adversely a number of times by this as well as other courts.

[14] We do not deem it necessary to set all of them out in this opinion, as nearly all these objections seem to us to have been to every detail in the conduct of the trial. It is sufficient to say that, after a most careful consideration of them, we find no prejudicial error in the rulings of the court on any of these objections. We will only pass on the assignments which are of some importance. The objections relating to sales made by the defendant Taylor previous to the date charged in the indictment were properly overruled as they were clearly admissible on the first count,

charging the defendants with being dealers. Evidence of registration and payment of the special tax by Taylor was only established after the government had concluded its evidence, and was not proved by the defendant Nichols any time. A single sale is not always sufficient to constitute one a dealer. Ledbetter v. United States, 170 U. S. 606, 18 S. Ct. 774, 42 L. Ed. 1162; Bailey v. United States, 259 F. 88 (C. C. A. 6); McNutt v. United States, 267 F. 670, 675 (C. C. A. 8). For this reason it is proper to prove other sales, if other sales were made, and thereby remove all doubts as to the defendant being a dealer.

[15] Another assignment relates to objections made to some of the witnesses, who were government employees, charged with the enforcement of the narcotic laws, referring to memoranda made by them, when testifying. These memoranda, they testified, were made immediately after the transactions had taken place, and they were permitted to examine them for the purpose of refreshing their memory. It would be practically impossible for officers, making daily investigations of alleged violations of law, to remember the names, dates, and what took place, without referring to notes made by them at the time or immediately thereafter. The authorities on this point are numerous, but we need only cite a few. Hodson v. United States, 250 F. 421 (C. C. A. 8); McHenry v. United States, 51 App. D. C. 119, 276 F. 761, 34 A. L. R. 1109; Goodfriend v. United States, 294 F. 148 (C. C. A. 9).

[16, 17] Nor did the court err in permitting, on cross-examination of the defendant Taylor, questions to be asked as to his knowledge of an ordinary dose of morphine, the number of grains in an ounce, and similar questions, although he had not testified to these matters in his direct examination. While the general rule is that, the cross-examination of a defendant when he takes the stand, he becomes a witness, is subject to the same rule of law as any other witness (Raffel v. United States, 271 U. S. 494, 46 S. Ct. 566, 70 L. Ed. 1054), and the cross-examination must be confined to the matters brought out on his examination in chief, but, as he testified on his direct examination concerning his qualifications as a pharmacist, it was proper to ask these questions. Besides these questions and answers were clearly nonprejudicial.

[18] The charge of the court was a clear and correct statement of the law, and included all the special requests of defendants, which were correct. Whether the defendants acted for themselves, or as agents of others, is immaterial. Section 332 of the Penal Code (Comp.

St. § 10506) makes every person who aids or abets another in committing an offense a principal. The exception to this part of the charge is untenable.

[19] There were also exceptions saved to that part of the charge in which the court stated to the jury that certain facts are undisputed. It is not claimed, and could not be claimed, that the evidence on the issues referred to was not undisputed; but it is contended that it took from the jury any question of the weight and credibility of the evidence. It is elementary that in the national courts, as in the courts of Great Britain, this is permissible, and requires no citation of authorities.

[20] Other objections raised are too well settled by former decisions of this as well as federal courts generally, to require notice. Counsel in their zeal for their clients have grasped at straws. We have carefully read this record, and the evidence of guilt of the defendant Nichols on the first and third counts is so conclusive that, if some error had been committed, and we do not say there was, it would be our duty under section 269 of the Judicial Code, as amended by the Act of February 26, 1919, c. 48 (section 1246, U. S. Comp. Statutes 1919) to affirm the judgment.

[21] This also applies to the defendant Taylor on the third count. The evidence shows a number of sales in large quantities by both defendants. The narcotics sold and purchased by them were in packages, which were introduced in evidence, and shown not to have been stamped. This is sufficient to warrant the verdict of guilty on the third count.

[22] The motion for a new trial is based on the statement that, a few days after the trial, the witness Smith was found operating an opium den in Kansas City. It is claimed that, had this been known and shown at the trial, the jury might have disregarded the evidence of Smith. Assuming this to be true, there is ample evidence, without Smith's testimony, to establish that defendants had possession of the seven ounces of morphine, as charged in the first count, and that they were in unstamped containers, as charged in the third count. The witness Smith did not testify to any facts charged in the third count.

[23] The granting of a motion for new trial is addressed to the discretion of the trial judge, and only in case of a clear abuse of discretion will an appellate court review a denial thereof by the trial judge. In our opinion there was no abuse of discretion in denying the motion.

The judgment against the defendant Taylor on the first count is reversed; the judgment against the defendant Nichols on the

first count is affirmed; the judgment against the defendant Taylor on the second count is affirmed; and the judgments against both defendants on the third count are affirmed.

STONE, Circuit Judge. I concur with the results reached and with the expressions in the opinion of Judge TRIEBER; however, there are two matters which I desire to touch upon.

The first of these is that rulings of the trial court on motions for new trial, *except as founded upon newly discovered evidence,* are not subject to review in United States courts. [24, 25] The second relates to the challenge respecting the use of a memorandum by the witness Ybarra while she was testifying. Counsel for accused objected, because they were not permitted to inspect this memorandum. I think they had such right. I am equally certain that, in this instance, no prejudice resulted from such denial of inspection. These offenses were committed on July 23d. All that took place before that date referred to the development of the situation in so far as securing the confidence of the accused. The acquaintance of Miss Ybarra with Taylor began on July 8th, at his drug store. Thereafter, she went to the store every day up to July 23d, except July 11th, 12th and 18th. The memorandum was used to refresh her recollection as to whether certain matters occurred upon the 21st or the 22d of July, as to which dates she was confused somewhat. The record is clear that it was mainly, if not entirely, for this sole purpose that she used the memorandum. The use of the memorandum was brief and it was soon laid aside at the request of counsel for the government. Also, it is clear, from the grueling cross-examination by two separate counsel for different defendants that the various occurrences within the space of these two days (July 21st and 22d) were clear in her memory. It was not important upon which of these two days any of these occurrences happened. Therefore, the use of the memorandum was not material and a refusal of inspection thereof was harmless error. The testimony leading up to the use of the memorandum was as follows:

"Q. And when did you return to the drug store again, Miss Ybarra? A. He told us to come back the next day.

"Q. That is on the 21st? A. On the 21st.

"Q. And did you go back the next day? A. We did.

"Q. That is, both you and Staley? A. Yes.

"Q. Who was present the next day when you returned? A. Mr. Taylor.

"Q. Mr. Taylor—did you have any conversation with Taylor at that time? A. Yes. He told us— I was talking with him on the sale of the ten ounces, and he said he had talked to his partner in regards to this.

"Mr. Frank Rader: How is that?

"A. (continuing): He had talked to his partner in regard to this 10 ounces and he said he could get it for him and he also told Mr. Staley that he could get him more than that, and he would advise him to get a safety deposit box down in the bank and keep the five ounces that was being shipped in to him from New York in that; then he would have it all of the time, and would not have to fool with the bootleggers; just take out an amount for a short while, and he would not have to fool with the bootleggers.

"Q. Do you recall any other conversation that took place on this date, Miss Ybarra? A. Yes; I am a bit confused between the 21st and 22d.

"Mr. Jas. Rader: She can certainly talk louder than that, if your honor please.

"The Court: Please speak more distinctly; you may refer to any memorandum you have.

"The Witness: Thank you.

"Mr. Jas. Rader: If the court please, we object to her referring to any memorandum, unless we are permitted to inspect the memorandum and cross-examine her from it.

"The Court: Any witness is entitled to refresh his memory from memoranda.

"Mr. Jas. Rader: And we ask the court for permission to examine the memorandum and question her from it.

"Mr. Madison: We are not offering the memorandum in evidence, and until we do counsel has no right to inspect it.

"The Court: Well, you will not be permitted to examine the memorandum now, but you will later, or it will be passed upon when that times comes.

"Mr. Jas. Rader: I call the attention of the court to the fact that we have the right to confront the witness; if she is testifying from that book we want the book in evidence—

"The Court: Are you making an objection?

"Mr. Jas. Rader: We ask the court for permission to examine the memorandum, if she is going to testify from that.

"The Court: Permission is denied.

"Mr. Jas. Rader: Defendants except.

"To which action, order and ruling of the court the defendants, and each of them, then and there at the time duly excepted and still except."

The use of the memorandum then followed:

"The Court: Proceed.

"A. (continuing): I visited the store July 21st, accompanied by Mr. Staley at 2 p. m. Mr. Taylor was out, and Mr. Harris said, 'Bill wants to see you,' and he went to the 'phone to call Mr. Taylor; he said he would call him. Mr. Harris advised us that it would be best for us to buy—that it would be well for us to buy—five ounces that were coming in to us; take them; that it was good stuff; no danger of it being bootleg stuff; he said that he and Mr. Taylor took no chances in getting inferior narcotic drugs, because the government made it very hard on the big fellows, and was sending them to the penitentiary—

"Q. (interrupting): Who was speaking at that time? A. Mr. Harris.

"Q. That was the defendant Harris? A. Yes.

"Q. All right, proceed. A. Where did I leave off? (The previous answer read by the reporter.)

"A. (continuing): To the penitentiary, and should they sell inferior stuff somebody might put up a squawk and get them into trouble. In a short while Mr. Taylor arrived and said he had made arrangements with his partner and another fellow to make the delivery and was to meet him and arrange for it.

"Mr. Marks: Your honor, I desire to call the court's attention to the fact and to have the record show that this witness is testifying from the black memorandum book which she holds in her hand. She is and has been answering questions by reference to the book each time a question is asked her. I desire to object on behalf of all of the defendants on the ground that she is not refreshing her recollection but is making direct answers from matter written in the book she holds. She hears the question, and then refers to the book and recites from it.

"The Court: Well, you must not read from any memorandum.

"Mr. Marks: The witness ought to be reprimanded, and we request the privilege of using the book for cross-examination.

"The Court: You may refresh your recollection, however, from any memorandum you have.

"Mr. Marks: The jury has seen every instance; she looks at the memorandum every few words. The defendants have a right to be confronted by the witness who testifies against them, and in this instance it is the book and not this witness on the stand. We renew our request for the book.

"The Court: The request will be denied.

"Mr. Marks: All of the defendants except.

"To which action, order and ruling of the court the defendants, and each of them, then and there at the time duly excepted and still except.

"Mr. Roney: Miss Ybarra, will you just lay aside your note book. I believe you can recall the facts. Now let's proceed to the next time. Go ahead and finish the conversation as you recall it."

The brief use of this memorandum is further emphasized by an extract from the cross-examination, when counsel was asking about occurrences on July 13th, as follows:

"Q. Miss Ybarra, now, since this matter has been challenged to your attention, what are the facts about the visit or visits of July 13th? A. Since you have refreshed my memory, Mr. Marks, I remember of having talked to both Mr. Taylor and Mr. Harris on July 13, 1925.

"Q. On two separate visits? A. Yes.

"Q. Yes? A. Yes; I remember now.

"Q. Yes; did this memorandum which you had yesterday have any information on that matter? A. I presume it did.

"Q. The memorandum that I am referring to, Miss Ybarra, is the one you had in your lap, the little black book that you opened, and as I saw you once in a while, which I did, and which you did do as I understood, refer to; that is the book you have in mind as having this information in it? A. I have some notes in my memorandum book, Mr. Marks.

"Q. And is that the book you refreshed your recollection from? A. No; when you yourself read the questions and answers I remembered.

"Q. But I said that, whatever information you have given, your memorandum book is supposed to have it, concerning the meeting of July 13th? A. I have it—

"Q. (interrupting): Will you answer that yes or no; does it have the meeting of July 13th? A. Yes.

"Q. Yes; and you don't have the memorandum book to-day before you, do you? A. No; I was not permitted to use it.

"Q. And you are not referring to the cross-examination going on now, or that has gone on before, go on this morning, are you; you are not referring to it? A. No, Mr. Marks.

"Q. Yes; and you did have it on a part of your direct examination, and refer to it frequently, did you not? A. No; there was a tiny space of time that I tried to use it.

"Q. A tiny space of time? A. I consider it so."

Again, in cross-examination, when she was being asked as to the visits to the store on July 21st, the following:

"Q. Give us, approximately, Miss Ybarra,

morning or afternoon, or was there but one visit, or was there any visit?

"Mr. Madison: I would just like permission to ask the witness a question as to whether she would like to refer to her memorandum, for the purpose of fixing these things, and, if so, that she be permitted to do so.

"The Court: The court has already said that she is permitted, and also any other witness, to use any memorandum that she has.

"Mr. Madison: I would like the witness to understand that she has that right.

"The Witness: I did not bring my memorandum. You did not want me to see it yesterday.

"Q. (by Mr. Marks): I did not? The court said you could do so. A. That gentleman (indicating)."

On cross-examination, it was developed that the witness had, after leaving the stand overnight and during the cross-examination, looked at her memorandum, but this was solely to verify, in her own mind, the accuracy of testimony, already given on cross-examination, as to what time of day she had first gone to the store on the 23d. This testimony was already in the record and had been the subject of cross-examination and there is no change therein after she had consulted her memorandum off the stand. In short, that use of the memorandum was after the testimony had been given without such aid, was not for the purpose of affecting her testimony, and did not do so. Therefore, it seems clear that the only testimony of this witness which was affected by use of the memorandum was as above first stated. No possible prejudice could have resulted from the denial of inspection in so far as this right existed here.

VAN VALKENBURGH, Circuit Judge, concurs in the main and in the concurring opinion above.