**UNITED STATES v. HUGHEY.**
Crim. A. No. 4165.

United States District Court
W. D. Arkansas, Texarkana Division.
Nov. 20, 1953.

Charles W. Atkinson, Fort Smith, Ark., for plaintiff.

George F. Edwardes, Texarkana, Ark., for defendant.

LEMLEY, Chief Judge.

This cause comes on for hearing upon the defendant's renewed motion for a judgment of acquittal, coupled with an alternative motion for a new trial; said motions have been submitted upon defendant's written brief and oral argument.

The defendant was tried and convicted upon an indictment charging that on or about December 21, 1952, and prior thereto, she had carried on the business of a retail liquor dealer and had wilfully failed to pay the special tax required by law, in violation of 26 U.S.C.A. § 3253.[1] At the conclusion of the Government's evidence, defendant moved for a verdict of acquittal, upon which motion we reserved our ruling; the defendant offered no evidence, and the case was submitted to the jury which returned a verdict of guilty. Thereafter, and within apt time, the defendant filed the instant motion as authorized by Rule 29(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. In her said motions, the defendant challenges the sufficiency of the evidence to justify the submission of the case to the jury or to sustain the verdict; she contends further that the evidence "clearly demonstrates an entrapment as a matter of law"; that we erred in refusing to instruct the jury that the witness, Bennett, an agent of the Federal Alcohol Tax Unit, was an accomplice whose testimony should be received with great caution; that we erred in admitting secondary evidence of the contents of a number of bottles seized by Federal agents at the home of the defendant and of the labelling on said bottles; and that we erred in admitting testimony concerning an admission made by the defendant to the officers at the time of her arrest.

The evidence relied upon by the Government to convict was substantially as follows:

Around noon on Sunday, December 21, 1952, Howard J. Bennett and William A. Tolleson, investigators of the Alcohol and Tobacco Tax Division of the Treasury Department, commenced an observation of defendant's home, which is located on East 36th Street on the outskirts of Texarkana, Arkansas; in the course of their vigil, they observed ten or twelve men enter and leave the defendant's house; after observing these transactions for approximately forty-five minutes, Bennett and Tolleson left, and Bennett returned about an hour and a half later. He approached the house and was admitted by the defendant; upon entering, he purchased from the defendant without difficulty a fifth of Schenley's Black Label Whiskey, paying therefor $7.50. This whiskey was in a standard bottle, which was full and sealed, and which had affixed to it the proper amount of revenue stamps. After buying the whiskey, Bennett took it to the home of Mr. Tolleson, who broke the seal, opened the bottle and tasted the contents in the presence of Mr. Bennett, ascertaining that it was whiskey. Thereafter, Tolleson retained this bottle and it was introduced in evidence at the trial. Later on the same day, Bennett and Tolleson

1. Said statute is, insofar as here pertinent, as follows: "Any person who shall carry on the business of a * * * retail liquor dealer * * * and willfully fails to pay the special tax as required by law, shall, for every such offense, be fined not less than $100 nor more than $5,000 and be imprisoned for not less than thirty days nor more than two years."

obtained a search warrant from the United States Commissioner, and, accompanied by one W. W. Alexander, revisited the defendant's home. After identifying themselves as Federal officers, they inquired of the defendant whether or not she had a Federal retail liquor dealer's permit; she replied that she had no such permit, that she had been in business for seven years and had never obtained one.[2] Thereafter, the officers searched the house and found a number of full bottles, having the total capacity of four and one-half gallons, bearing the labels of well-known brands of whiskey concealed under a bed and in a cabinet in the same room. Mr. Tolleson took charge of these bottles which were in fifth, pint and half-pint sizes, and which were full and sealed and bore internal revenue stamps. After the seizure Tolleson carried said bottles, with contents intact, to the offices of the Alcohol and Tobacco Tax Division at Little Rock, but in some undetermined way, they, together with their contents, disappeared prior to the trial and their present whereabouts are unknown. Mr. Bennett was able, however, to testify in detail as to the descriptions of the several bottles and the labels thereon.

In considering the defendant's motions we, of course, view the testimony in the light most favorable to the Government, and when it is so viewed, we are satisfied that there was substantial evidence from which the jury could find that the defendant was engaged in the business of a retail liquor dealer within the meaning of the law and that she wilfully failed to pay the special tax imposed upon such dealers.

It is well settled that evidence of a single sale is sufficient to sustain a conviction under Section 3253 where there are corroborating circumstances tending to show that the defendant was engaged in the retail liquor business and had liquor on hand, or was ready and able to procure it, for the purpose of selling it to such persons as he or she might accept as customers. Bailey v. U. S., 6 Cir., 259 F. 88; Sodini v. U. S., 6 Cir., 261 F. 913; Conyer v. U. S., 6 Cir., 80 F.2d 292; Johnson v. U. S., 5 Cir., 84 F.2d 114; Wilson v. U. S., 6 Cir., 149 F.2d 780; U. S. v. 673 Cases of Distilled Spirits and Wines, D.C.Minn., 74 F.Supp. 622. That the Court of Appeals for this Circuit is in accord with the foregoing cases appears from Taran v. U. S., 8 Cir., 88 F.2d 54, wherein Bailey v. U. S. and Sodini v. U. S., both supra, were cited with approval.

In the Taran case the defendant was indicted for engaging in both the retail and wholesale liquor business without paying the special taxes imposed by law, and the Court in upholding his conviction said:

" * * * There was direct evidence that defendant, * * *, was selling the liquor in quantities of less than five gallons, and hence, that he was engaged in the business of a retail liquor dealer. There was also evidence that defendant held himself out as ready, willing, and able to deliver liquor in quantities exceeding five gallons in one sale.

---

2. Mr. Bennett's testimony on this point was as follows:

"Q. What did you do after you got to the defendant's house? A. I knocked on the door. She came to the door, stood back, and we walked in. Mr. Tolleson had a search warrant with him. I told Mrs. Hughey I was a Federal officer, and he told her he was, and Mr. Alexander identified himself. He asked her if she had a retail liquor dealer's stamp.

"Q. Did she have one? A. No, she said she didn't have one.

"Q. What else did she say? A. She said she had been in business 7 years and never had bought one."

Mr. Tolleson testified in the same connection:

"Q. Did the defendant produce a retail liquor dealer's stamp? A. No, sir.

"Q. Did she make any statement about whether or not she had one? A. She said she did not have one and had never had.

"Q. Did she make any other statement, or indicate why she didn't have one? A. Yes, she said she had been advised not to buy one; that the State officers could pick her up at any time if she did."

Through Larson, he was attempting to effect such sales, and this was sufficient to show that he was carrying on the business not only of a retail liquor dealer, but also of a wholesale liquor dealer. * * * Sodini v. United States, 6 Cir., 261 F. 913; Bailey v. United States, 6 Cir., 259 F. 88. *This is not a case in which there was an isolated sale unconnected with circumstances showing that defendant was in the business of selling.*" (88 F.2d at page 58, emphasis supplied)

In Bailey v. U. S., supra, [259 F. 89] the Court stated that the phrase "carry on the business of a retail liquor dealer" would not seem to be difficult of definition, either from the standpoint of the words used or from that of the purpose of the law. It was said:

"There must not only be a 'business,' but it must be 'carried on'. The purpose of the law was to raise revenue by an occupation tax. Both of these considerations imply that there must be something more than a single casual sale, disconnected from any habitual or intended practice. There cannot be a 'business carried on,' unless there is either an actual or intended adherence to that course of conduct which alone can constitute the adoption and practice of a business or occupation. Of course, it need not be the sole business or occupation, or even one of any comparative importance as relating to the other business or occupation of the same person; nor would it be necessary that any particular quantity of material should be kept on hand for sale for any particular length of time; but both the ability and willingness to make sales from time to time, whenever appropriate conditions might arise, seem to us to be required, by the plain meaning of the words, in order to make out an offense against the statute." 259 F. at page 89.

Further on in the same opinion it was said:

"We are convinced that the true rule of construction is that * * * a single sale is to be interpreted in the light of all the circumstances, and it may vary from being little or no evidence up to the point of being convincing evidence that the seller is carrying on the business; and that, in order to convict, the jury should be satisfied that the defendant either had liquor on hand, or was ready and able to procure it, in either case with the purpose of selling some or all of it to such persons as he might from time to time find or conclude or accept as customers." Id., 259 F. at page 92.

In Sodini v. U. S., supra, it was said that where the defendant owned a considerable quantity of whiskey, located at the place of the alleged sale, and held this whiskey for the purpose of selling it to such persons as he might select as customers, and actually participated in the sale which brought about his arrest, it was sufficient to convict him as, "In these circumstances, the rules of law do not imperatively make proof of more than one sale necessary to conviction." 261 F. at page 914.

Taran v. U. S., supra, is a much later case than McNutt v. U. S., 8 Cir., 267 F. 670, 675, upon which the defendant places heavy reliance; and to the extent, if any, to which the two decisions are conflicting, we should follow the later case. But we do not feel that the McNutt case actually holds more than that mere proof of an isolated sale alone is not sufficient to convict under this statute. While it is recognized that the Court in that case discussed the absence of "appliances or surroundings of retail liquor dealers", we do not feel that the language used was intended to mean that before one can be convicted of a violation of this statute he must operate openly, or with a bar or counter, or that he must hang a sign in front of his place of business. To so hold would mean that no bootlegger operating surreptitiously could ever be convicted of this offense. The same statement may be made with respect to the

language of the Supreme Court in Ledbetter v. U. S., 170 U.S. 606, 18 S.Ct. 774, 42 L.Ed. 1162, to the effect that the carrying on of a retail liquor business means that the dealer "holds himself out to the public" as selling liquor or offering it for sale. We do not think that the Court meant that it is necessary for the evidence to show that the defendant held himself out to the public as a liquor dealer in the same sense that a legitimate dealer holds himself out, or in the sense that a groceryman or drygoods merchant holds himself out to the public as being in business. We think the term means no more than, as was said in the Bailey case, that the defendant has the whiskey, or is willing and able to procure it, for the purpose of selling it to such persons as he may conclude to accept as customers. In this connection, attention is called to Taylor v. U. S., 8 Cir., 19 F.2d 813, 816, wherein it was said that it was sufficient to establish the status of the defendants as dealers in narcotics if it appeared "that they had sold narcotics promiscuously, and were ready or willing to sell to any one who applied to purchase, if they were unaware that they were officers or undercover men." It might also be pointed out that in the same opinion it was said that a single sale is "not *always* sufficient to constitute one a dealer", 19 F.2d at page 817, emphasis added, the Court citing Ledbetter v. U. S. and McNutt v. U. S., both supra.

Applying the foregoing principles to the instant case, we feel that when the one sale which the defendant made to Mr. Bennett is considered in connection with the going and coming of persons to and from her house, the ease with which Mr. Bennett made his purchase, the defendant's subsequent admission that she had been in business for seven years without a retail liquor dealer's permit and that she had been advised not to procure one, the quantity and kind of whiskey found, the different sizes of the bottles, and the way it was concealed, there was substantial evidence to take this case to the jury, and to sustain the latter's verdict.

Nor can we agree with the defendant that the evidence clearly shows that she was entrapped as a matter of law. To our mind the jury was amply justified in finding that Mr. Bennett did no more than afford her the means and opportunity of making a sale which she was otherwise ready, willing and able to make. Such is not entrapment.

We likewise reject defendant's contention that Mr. Bennett was an accomplice of the defendant and that the jury should have been instructed in that connection. It is well settled that an officer who makes a purchase of liquor or morphine from a defendant under the same circumstances that Mr. Bennett made his purchase of liquor from the defendant here is not considered an accomplice. Rose v. U. S., 6 Cir., 274 F. 245, certiorari denied 257 U.S. 655, 42 S.Ct. 97, 66 L.Ed. 419; Lett v. U. S., 8 Cir., 15 F.2d 690; Smith v. U. S., 8 Cir., 17 F.2d 723, certiorari denied 274 U.S. 762, 47 S.Ct. 770, 71 L.Ed. 1339. The case of Clendennin v. U. S., 4 Cir., 265 F. 412, cited by the defendant in this connection, is readily distinguishable from the instant case, and is inapplicable here.

With respect to the defendant's contention that we committed error in permitting the two Federal agents to describe the bottles seized and the labelling thereon, rather than requiring the production of the bottles and labels themselves, we feel that a satisfactory showing was made that said bottles had disappeared and could not be produced; hence, the testimony of which the defendant complains was admissible as secondary evidence.

As stated, the defendant finally contends that error was made in permitting Mr. Bennett and Mr. Tolleson to testify with respect to her admission above referred to. Counsel did not discuss this contention in his brief or in the course of his oral argument, and we find it to be without merit. The defendant made the admission voluntarily and after the officers had identified themselves

to her and before she was arrested. There is no suggstion that said admission was induced by any force, threats or promises.

From the foregoing, it follows that both of the defendant's motions must be overruled.