GLOVER v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.  July 18, 1906.)

No. 2,392.

1. WITNESSES—CRIMINAL LAW—MISCONDUCT OF COURT—CROSS-EXAMINATION.

Where, in a prosecution for robbery, a witness had testified positively in support of defendant's alibi as to the place where he saw defendant on or about the time of the alleged robbery, it was improper for the court to catechise the witness at length as to whether he was absolutely sure that the defendent was at the place stated, and to tell the witness that if he was mistaken he could correct his statement, and to ask him to think and see whether or not he was not mistaken, and to correct his testimony if there was any doubt in his mind concerning his testimony.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 852, 911.]

2. SAME—IMPEACHMENT OF CHARACTER OF WITNESS—ACCUSATION OF CRIME.

· In a prosecution for robbery, it was improper for the prosecuting attorney, after certain witnesses had answered that they had been arrested for offenses in instances in which they had not even been prosecuted, and in others where they had been acquitted, to ask them whether they had not been arrested or accused several times, the mere accusation or indictment of a witness for a criminal offense, without conviction, being inadmissible for the purpose of impeachment.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1126–1128.]

3. CRIMINAL LAW—ALIBI—BURDEN OF PROOF.

Where, in a prosecution for robbery, the indictment contained a charge that defendant did "then and there" commit an assault, the burden of proof that defendant was present at the time and place alleged was on the prosecution, and never shifted, and it was therefore error to charge that the defense of alibi, to be entitled to consideration, must be such as to show that at the very time of commission of the offense charged the accused was at another place so far away and under such circumstances that he could not have participated in the commission of the offense, and that the burden of proof that the defendant was at another place, etc., must be sustained by a preponderance of the evidence.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 751.]

4. SAME—CURING ERROR.

Such instruction was not cured by a further instruction that if the jury had any reasonable doubt as to whether defendant was at some other place when the crime was committed, they should give defendant the benefit of that doubt.

In Error to the United States Court of Appeals for the Indian Territory.

For opinion below, see 91 S. W. 41.

De Roos Bailey and Thomas H. Owen, for plaintiff in error.

William M. Mellette, U. S. Atty., and E. L. Kistler, Asst. U. S. Atty.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. The plaintiff in error, John Glover (for convenience hereinafter designated the defendant), was indicted at the December term, 1904, in the United States Court for the Western District of the Indian Territory for the crime of robbery. He was tried, convicted, and sentenced to pay a fine of $50 and to imprisonment in the United States Penitentiary at Ft. Leavenworth for a term of six years. This judgment was affirmed by the Court of Appeals of the territory, to reverse which the defendant sued out writ of error from this court. The robbery in question was alleged to have been committed upon one Frank Neeley on the 27th day of May, 1904. The property taken from him was a pistol of the value of $15.

No unprejudiced, intelligent mind can read the evidence and proceedings in this record without receiving a deep impression that this defendant was convicted, the evidence and the law to the contrary notwithstanding. This spirit of unfairness towards him throughout the trial is apparent. He was designated by the prosecuting attorney in a question as a "State nigger." And in many instances he and the witnesses of his race were treated as if they had no rights in law which a court of justice was bound to respect. There was but one witness on behalf of the prosecution, Frank Neeley, the person claimed to have been robbed. His testimony in substance was, that about 8 or 9 o'clock in the morning of May 27, 1904, he was arrested on the highway by a party of five men, and under the fear of a Winchester rifle in the hands of the defendant he was forced to give up his pistol, valued by him at about $10. It appears from his testimony that he had no acquaintance with the defendant, and left it extremely doubtful whether or not he had ever seen him previous to the alleged assault. Despite his evasiveness and equivocation, the cross-examination developed beyond any reasonable ground for cavil that when this defendant and one Jamison, with others, were brought before the commissioner charged with this felony, on preliminary hearing, Neeley identified said Jamison as his assailant, and testified that he did not recognize the defendant as one of the party. On his testimony Jamison was bound over and committed to jail, and while thus held for the action of the grand jury he died. On this state of the proofs the prosecution rested. Had the defendant's counsel moved, as he should have done, for a directed verdict of not guilty, the trial court would have been justified in granting the request. The safeguarding of the liberty of an accused person is not wholly left in the keeping of the jury of 12. A jealous regard for that humane spirit of the law that attends every human being brought before the judgment seat for trial on a criminal charge, declaring that he must be presumed to be guiltless, and that before his liberty can be interrupted his guilt must be established beyond a reasonable doubt, demands of the presiding judge in the first instance a determination of the question as to whether or not, on such self-contradicting and self-stultifying statements as made by the witness, Neeley, without a single corroborating fact or circumstance, the case should pass beyond the control of his enlightened judgment and conscience. Mr. Justice Brewer,

in Patton v. Texas & Pac. Railway Company, 179 U. S. 660, 21 Sup. Ct. 275, 45 L. Ed. 361, speaking of a proceeding in a civil action, said:

"It is undoubtedly true that cases are not to be lightly taken from the jury; that jurors are the recognized triers of questions of fact. * * * Hence it is that seldom an appellate court reverses the action of a trial court in declining to give a peremptory instruction for a verdict one way or the other. At the same time, the judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility. He has the same opportunity that jurors have for seeing the witnesses, for noting all those matters in a trial not capable of record, and when in his deliberate opinion there is no excuse for a verdict save in favor of one party, and he so rules by instructions to that effect, an appellate court will pay large respect to his judgment."

If this rule of judicial responsibility obtains in a mere civil action, how much more potential should it be where the issue of life or liberty is involved. The cause of the defendant was certainly not prejudiced by the large amount of evidence in his behalf, which was mainly directed to the establishment of an alibi. Aside from the testimony of the defendant, which, viewed from the standpoint of his meager intelligence and evident lack of capacity for invention, accounting with marked particularization for his whereabouts away from the scene of the robbery, four witnesses testified positively to his presence at the time at a place far removed from that of the robbery. A fifth witness testified to seeing a posse of men corresponding in number to that claimed by Neeley as present at the assault, near to and going in the direction of the place about the time fixed by Neeley, and that the defendant was not one of them. A sixth witness, a woman in nowise related to the defendant, testified to seeing the overt act, and that the defendant, well known to her, was not there. It may be conceded that in all matters of detail the testimony of some of these witnesses was not entirely harmonious. But having a sensible, reasonable regard to their different view points, the degree of inattention to some one incident and the degree of attention given by others thereto, there was no such marked divergence as ought to create in any impartial mind a reasonable suspicion of a conspiracy among these witnesses to establish the alibi. It is the judgment of intelligent and observant critics that one of the strong proofs of the absence of manufactured evidence among a class bearing testimony to a common, central fact, is the existence of some discrepancies in their statements as to minor details.

A striking illustration of the character of the discrepancies relied upon by the prosecution is found in the incident of leaving the house of the defendant's mother-in-law for the schoolhouse to attend a neighborhood gathering; the departure and trip being claimed by the defendant to have been concurrent in time with the alleged robbery. One witness, for instance, testified that the defendant, with others, rode in a wagon; while he and another stated that he walked. That such a wagon did so go is not controverted. How easy was it for a witness who saw the wagon leaving with a number of people in

it at the time the defendant started to have received the impression that he was also in the wagon, there being nothing especially to direct the attention to the particular fact. Again, one witness, on cross-examination, testified as to what kind and variety of things the party had for breakfast before starting on the trip; while another testified to a different menu. As it does not appear that any of them were epicures, the quality and quantity of the eatables on the particular occasion, which was not a feast, naturally enough would not have been definitely carried for a long period of time in their memory. So in respect of exactly how many people and who they were at this house the day before. Likewise was it rather smart than fair to press some of these witnesses on cross-examination as to where they were and what they did on some other specified day of the same month, in disregard of the absolute reasonableness why a day like the closing scene of a school term, when the neighbors with their baskets of delectable viands assembled and made it a festal event, would be fixed in their minds. On such trivialities, of claimed divergencies in testimony, was the evidence of six witnesses in favor of the defendant discredited, while on the testimony of one witness, a self-confessed perjurer, was the defendant convicted and sentenced to serve six years in a penitentiary. To further illustrate the spirit of dealing with the defendant's witnesses, when the witness Solomon was on the stand, who had testified very positively as to the place where he saw the defendant on or about the time of the alleged robbery, and whose testimony, if unimpeached, was of the highest value to the defendant, the court, as if to break the force of his testimony, took the witness in hand and catechised him as follows:

"Solomon, the court asks you whether you are absolutely sure and certain that this defendant was there at the school celebration on the 27th; if you are mistaken you can correct your statement yet, but if you are absolutely certain say so; but think a moment and see whether or not you are mistaken about it. If you are mistaken correct your statement; if you are not, why just say it out. Perhaps you might be mistaken; the court doesn't know; but the court wants to have you remember everything properly and truthfully, and if there is any doubt in your mind, make your correction; if there is any doubt in your mind that this defendant was not there; men sometimes are mistaken; just think about it and deliberate about it, and correct your statement if you are mistaken."

This bears on its face its own comment.

As further illustrating the irregular method of procedure to the prejudice of the defendant, the prosecuting attorney inquired of several witnesses for the defense as to whether they had not been arrested at some time on some charge or other. Although the witnesses answered that they had been arrested for offenses, in instances they had not even been prosecuted, and where prosecuted they had been acquitted, the prosecuting attorney would follow this up, however, with a suggestive query: "You have been arrested or accused several times?" It is competent for the purpose of discrediting a witness to show that he has been convicted of a crime. The general rule is that the crime must rise to the dignity of a felony or petit

larceny.   State v. Taylor, 98 Mo. 244, 11 S. W. 570; State v. Kelsoe, 76 Mo. 507; State v. Donnelly, 130 Mo. 651, 32 S. W. 1124; Coble v. State, 31 Ohio St. 100; Glenn v. Clore, 42 Ind. 60.   Whatever may be the limit in this respect, nothing short of a conviction of a crime is admissible for the purpose of impeachment.   A mere accusation or indictment will not be admitted, for the reason that innocent men are often arrested charged with a criminal offense.   1 Greenleaf on Evidence (16th Ed.) 461b, 461c, pp. 579, 580.   The proper evidence of a conviction of crime is the record thereof.   See Baltimore & Ohio Railroad Company v. Rambo, 59 Fed. 75–80, 8 C. C. A. 6; Bise v. United States (recently decided by this court) 144 Fed. 374.   The practice of proving the former conviction by cross-examination is recognized in many states, usually by statute and occasionally by judicial decisions.   1 Greenleaf on Evidence (16th Ed.) par. 461b, note 8.   But where this practice is recognized, the proper question would be as to whether or not the party being interrogated had been convicted of a crime, and not whether he had been arrested or indicted.   Whether it is permissible, in the absence of any statute in the Indian Territory regulating the practice in this respect, to undertake to prove by cross-examination of the witness, without the production of the record, that he had been convicted of a crime, for the purpose merely of affecting his credibility and not as to his competency, it will be time enough for this court to determine when the question is properly before it.

In charging the jury on the important issue of the alibi the court said:

"Such defense, to be entitled to consideration, must be such as to show that at the very time of the commission of the crime charged the accused was at another place so far away and under such circumstances that he could not, with any ordinary exertion, have reached the place where the crime was committed so as to have participated in the commission thereof. But the court instructs the jury also, as a matter of law, that the burden to prove that the defendant was at another place at the time of the commission of the crime must be by a preponderance of evidence, that is, by the greater and superior evidence."

The defendant excepted to that part of the charge, whereupon the court further said:

"Gentlemen of the jury, the court will read to you again the instruction as to the alibi. The defense interposed by the defendant in this case is what is known in law as an alibi; that is, that the defendant claims that he was at another place at the time of the commission of the crime, and the court instructs the jury that such defense is as proper and legitimate, if proved, as any other, and all evidence bearing upon that point should be carefully considered by the jury. Such defense, to be entitled to consideration, must be such as to show that at the very time of the commission of the crime charged the accused was at another place so far away and under such circumstances that he could not, with any ordinary exertion, have reached the place where the crime was committed so as to have participated in the commission thereof. But the court instructs the jury also, as a matter of law, that the burden of proof that the defendant was at another place at the time of the commission of the crime must be by a preponderance of the evidence, that is, by the greater and superior evidence, but the court also instructs the jury that if they have any reasonable doubt as to whether

the defendant was at some other place when the crime was committed, they should give the defendant the benefit of that doubt."

The Supreme Court met the objection in question with two propositions of law: (1) That the exception was not renewed after the amended charge was delivered; and (2) that the amendment cured the defect in the original charge. To neither of these propositions can we assent.

If there was vice in so much of the paragraph as imposed upon the defendant the burden of establishing the alibi "by a preponderance of evidence, that is, by the greater and superior evidence," and that from all the facts and circumstances the jury were to "determine upon which side is the weight or preponderance of the evidence," it was not necessary to repeat the exception to the same matter when repeated by the court. As said by this court in Long-Bell Lumber Company v. Stump, 86 Fed. 583, 30 C. C. A. 260, speaking to a kindred question of practice:

"Having requested the court to give a proper declaration of law, and the court, by its refusal, having declared that it held the law to be otherwise, to which exception was duly taken, why should counsel be required again to except to the converse or modified declaration given by the court? It would be but a repetition of the objection already expressed in the first exception. And, so far from the silence of counsel at the reassertion of the error by the court evidencing a waiver of the first error, it but evinces a respectful deportment by counsel towards the court, in refraining from repetitious objections at the ruling of the court, after having once taken exception involving in effect the same principle which would be represented in the second exception."

The underlying vice in the foregoing charge of the court is in the assumption that in respect of the alibi the burden of proof "by a preponderance of evidence, that is, by the greater and superior evidence," shifted to the defendant. It loses sight of the fundamental rule in criminal procedure that the defendant is presumed to be innocent of the offense with which he is charged; that this is a continuing presumption which attends him like a guarding spirit throughout the ordeal of his trial, and imposes upon the prosecution the burden of overcoming such presumption by such weight of evidence as will satisfy the minds of the triers beyond a reasonable doubt of the defendant's guilt. This reasonable doubt in his favor applies to the evidence in its entirety and necessarily to any part of it.

Included in the indictment is the charge that the defendant did then and there commit the assault. Whereby the prosecution undertook to show by evidence that the defendant was present at the time and place. On this issue thus tendered the burden rested upon the prosecution. It never shifted. So when the defendant introduced evidence to show that he was not "then and there" present, he was but rebutting the proof offered by the prosecution tending to maintain the allegation that he was then and there. The protection of any reasonable doubt in favor of the defendant applies in such instance as to any other affirmative issue tendered in the charge. This is recognized as the correct doctrine by the great weight of authority.

People v. Fong Ah Sing, 64 Cal. 253, 28 Pac. 233; State v. Waterman, 1 Nev. 543; French v. State, 12 Ind. 670, 74 Am. Dec. 229; Adams v. State, 42 Ind. 373; Binns v. State, 46 Ind. 311; Howard v. State, 50 Ind. 190; Walker v. State, 42 Tex. 360; Toler v. State, 16 Ohio St. 583; Pollard v. State, 53 Miss. 410, 24 Am. Rep. 703; Miller v. People, 39 Ill. 457; Watson v. Commonwealth, 95 Pa. 418; Landis v. State, 70 Ga. 652, 48 Am. Rep. 588; Chappel v. State, 7 Cold. (Tenn.) 92; State v. Jaynes, 78 N. C. 504; People v. McCann, 16 N. Y. 58, 69 Am. Dec. 642; O'Connell v. People, 87 N. Y. 377, 380, 41 Am. Rep. 379; Walker v. People, 88 N. Y. 81, 88; People v. Garbutt, 17 Mich. 9, 22, 97 Am. Dec. 162; Cunningham v. State, 56 Miss. 269, 21 Am. Rep. 630; Dove v. State, 3 Heisk. (Tenn.) 348, 371; 1 Bishop, Crim. Proc. (3d Ed.) § 1062; Wharton, Crim. Evidence, § 333.

In the case of State v. Taylor, 118 Mo. 153, 24 S. W. 449, Gantt, P. J., maintained this rule of law in an exhaustive opinion in which the authorities are reviewed. This rule was applied by the Supreme Court in Davis v. United States, 160 U. S. 469, 16 Sup. Ct. 353, 40 L. Ed. 499, to the instance where the defendant relied upon the plea of insanity under an indictment for murder. Inasmuch as the prosecution in such case starts out with the presumption of the defendant's sanity, which presumption must be rebutted by the defendant, the burden is much more impressed in such trial than in the case at bar. Mr. Justice Harlan, speaking for the court, said:

"Upon whom then must rest the burden of proving that the accused, whose life it is sought to take under the forms of law, belongs to a class capable of commiting crime? On principle, it must rest upon those who affirm that he has committed this crime for which he is indicted. That burden is not fully discharged, nor is there any legal right to take the life of the accused, until guilt is made to appear from all the evidence in the case. The plea of not guilty is unlike a special plea in a civil action, which, admitting the case averred, seeks to establish substantive ground of defense by a preponderance of evidence. It is not in confession and avoidance, for it is a plea that controverts the existence of every fact essential to constitute the crime charged. Upon that plea the accused may stand, shielded by the presumption of his innocence, until it appears that he is guilty; and his guilt cannot in the very nature of things be regarded as proved, if the jury entertain a reasonable doubt from all the evidence whether he was legally capable of committing crime."

Further on he said:

"Strictly speaking, the burden of proof, as those words are understood in criminal law, is never upon the accused to establish his innocence or to disprove the facts necessary to establish the crime for which he is indicted. It is on the prosecution from the beginning to the end of the trial and applies to every element necessary to constitute the crime. Giving to the prosecution. where the defense is insanity, the benefit in the way of proof of the presumption in favor of sanity, the vital question from the time a plea of not guilty is entered until the return of the verdict, is whether upon all the evidence, by whatever side adduced, guilt is established beyond reasonable doubt. If the whole evidence, including that supplied by the presumption of sanity, does not exclude beyond reasonable doubt the hypothesis of insanity, of which some proof is adduced, the accused is entitled to an acquittal of the specific offense charged."

This ruling was applied and approved again in Hotema v. United States, 186 U. S. 413, 22 Sup. Ct. 895, 46 L. Ed. 1225. The vice, therefore, in the said charge was not cured by subsequently adding the words:

"If the jury have any reasonable doubt as to whether the defendant was at some other place when the crime was committed, they should give the defendant the benefit of that doubt."

The two propositions embraced in the same paragraph are legally incongruous, and were well calculated to confuse the understanding of the jury as to how they should apply the rule of reasonable doubt to a state of facts where, in the same connection, they were told that "as matter of law, the burden of proof that the defendant was at another place at the time of the commission of the crime must be by a preponderance of the evidence, that is, by the greater and superior evidence."

Error is assigned by the defendant respecting the refusal of the trial court to leave the matter of the assessment of the punishment to the jury. The indictment was predicated of section 2 of the act of Congress, approved February 15, 1888, entitled "An act to punish robbery, burglary, and larceny in the Indian Territory" (Act Feb. 15, 1888, c. 10, 25 Stat. 33), which declares:

"That any person hereafter convicted of any robbery or burglary in the Indian Territory shall be punished by a fine of not exceeding one thousand dollars, or imprisonment not exceeding fifteen years, or both, at the discretion of the court."

Section 3 declares that all acts and parts of acts inconsistent with this act are hereby repealed. As this provision of the act of Congress is complete within itself, and not made to depend upon any other statute, national or local, for its applicability or enforcement, it is exclusive. It is conformable to the general provisions of the United States statutes defining criminal offenses, committing to the jury only the question of the guilt or innocence of the accused, and to the court the discretion as to the assessment of the punishment, within the limits fixed by the statute.

It results that the action of the Court of Appeals of the Indian Territory in affirming the judgment of the District Court, and the judgment of the District Court, are reversed, and the case is remanded, with directions to the District Court to set aside the judgment of conviction and the verdict, and to grant a new trial.