ECHERT et al. v. UNITED STATES.

No. 14155.

United States Court of Appeals
Eighth Circuit.

April 19, 1951.

Eugene D. O'Sullivan, Jr., and Philip Abboud, Omaha, Neb. (Warren C. Schrempp, Omaha, Neb., on the brief), for appellants.

Edward J. Tangney, Asst. U. S. Atty., Omaha, Neb. (Joseph T. Votava, U.S.Atty., Omaha, Neb., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

The appellants were jointly indicted, tried, convicted and sentenced for violation of the White Slave Traffic Act, 18 U.S.C.A. § 2421, and they appeal. Separate motions for new trials were filed by each appellant and denied by the court.

The appellants complain here that the court erred (1) in calling and impaneling a jury in their absence; (2) in the admission and rejection of evidence; and (3) in denying motions for judgments of acquittal of the Echerts made at the close of the Government's evidence.

The indictment charged, and the evidence tended to prove, that appellants feloniously transported in interstate commerce from Omaha, Nebraska, to Sioux City, Iowa, and, as a part of the same trip, from Sioux City by way of Sidney, Nebraska, to Omaha, Nebraska, a woman named Patricia Colleen Sledge for the purpose of debauchery and with the intent and purpose of inducing, enticing and compelling her to give herself up to debauchery and to engage in immoral practices.

On April 6, 1950, the appellants appeared in the district court at Omaha, were arraigned and pleaded not guilty. They were at liberty on bail pending trial. They were notified that their case was set for trial at Omaha on Monday, April 17, 1950. They came to Omaha at that time for trial. One of their attorneys then informed them that four cases were set for trial ahead of their case. Appellants then voluntarily left Omaha and went to Topeka, Kansas, having arranged with their attorney to notify them in time for them to return for the trial when their case was reached. The case was reached for trial on Friday, April 21st. Their attorney notified them on that day and they started to Omaha. They had not arrived when their attorney reported to the judge in chambers that he was ready to proceed to select a jury, and that he was expecting the appellants to arrive at any time. A jury was accordingly selected, but appellants did not arrive until after court

adjourned. They were not present when the jury was selected.

On Monday, April 24, 1950, when court convened, at the direction of the court, the appellants, in the absence of the jury, but in the presence of counsel, were called separately to the witness stand to explain their absence on the preceding Friday. At the same time the court explained to them their rights and read to them Rule 43 of the Federal Rules of Criminal Procedure, 18 U.S. C.A. They then expressed satisfaction with the jury which had been selected and each one specifically waived any objection to the fact that the jury was impaneled and sworn in his absence.

The right of appellants to have been present at the impaneling of the jury before which they were tried is not questioned. Article III of the Constitution provides that "Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; * * *" and the Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

Rule 43 of the Federal Rules of Criminal Procedure is specific. It provides, so far as pertinent:

"*Presence of the Defendant.* The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict."

The question presented is not whether the appellants waived their right to complain because the jury was impaneled in their absence, but it is whether persons accused of a felony can waive such specific right or privilege. As said by the Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Every element of such a waiver is present here. Appellants' counsel were present, examined the panel and exercised appellants' peremptory challenges. Before anything further was done at the trial the court explained to the appellants their rights in the presence of their attorneys, and they then expressly stated that the jury selected "is all right", and that they each desired to waive any defect in the way the jury was impaneled.

In the Notes to Rule 43 of the Federal Rules of Criminal Procedure the Advisory Committee say "The first sentence of the rule setting forth the necessity of the defendant's presence at arraignment and trial is a restatement of existing law", citing Lewis v. United States, 146 U.S. 370, 13 S. Ct. 136, 36 L.Ed. 1011; Diaz v. United States, 223 U.S. 442, 455, 32 S.Ct. 250, 56 L. Ed. 500.

In the case of Lewis v. United States, supra, 146 U.S. at page 372, 13 S.Ct. at page 137, 36 L.Ed. 1011, the Supreme Court said: "A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner. While this rule has at times, and in the cases of misdemeanors, been somewhat relaxed, yet in felonies it is not in the power of the prisoner, either by himself or his counsel, to waive the right to be personally present during the trial." The court held that the impaneling of the jury is a part of the trial. And it was pointed out that the defendant in that case took exceptions at the trial to the procedure.

In the case of Diaz v. United States, supra, the defendant was present at the impaneling of the jury but at liberty on bail. After the trial had begun he voluntarily absented himself, and the trial proceeded in his absence. The Supreme Court held on appeal, 223 U.S. at page 455, 32 S.Ct. at page 254, 56 L.Ed. 500, that "where the offense

is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present, and leaves the court free to proceed with the trial in like manner and with like effect as if he were present."

The question here presented has arisen usually under a right claimed under Article III of the Constitution and the Sixth Amendment, supra. In Schick v. United States, 195 U.S. 65, 72, 24 S.Ct. 826, 828, 49 L.Ed. 99, involving the alleged waiver of trial by jury, the Supreme Court said: "When there is no constitutional or statutory mandate, and no public policy prohibiting, an accused may waive any privilege which he is given the right to enjoy." And the Court quoted with approval the statement of Chief Justice Shaw of the Supreme Court of Massachusetts in Commonwealth v. Dailey, 12 Cush. 80, 83, that "He [the accused] may waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court." In Patton v. United States, 281 U.S. 276, 298, 50 S.Ct. 253, 258, 74 L.Ed. 854, the Court say: " * * * article 3, § 2 [of the Constitution], is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so is to convert a privilege into an imperative requirement." And the Court held, in answer to a question submitted by this court, that the trial court had jurisdiction to try a criminal case without a jury with the consent of the defendant. This rule, it was held, is applicable in misdemeanors, and felonies but not in capital offenses. See, also, Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268. Upon the effect of waiver by an accused the Supreme Court in Johnson v. United States, 318 U.S. 189, 201, 63 S.Ct. 549, 555, 87 L.Ed. 704 said: "We cannot permit an accused to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him. However unwise the first choice may have been, the range of waiver is wide. Since the protection which could have been obtained was plainly waived, the accused cannot now be heard to charge the court with depriving him of a fair trial. The court only followed the course which he himself helped to chart and in which he acquiesced until the case was argued on appeal. The fact that the objection did not appear in the motion for new trial or in the assignments of error makes clear that the point now is a 'mere afterthought.' United States v. Manton, [2 Cir.], 107 F.2d [834] page 847."

Upon the question of the right and effect of waiver by an accused of his rights and privileges guaranteed by Article III of the Constitution and the Sixth Amendment, see, also, Levine v. United States, 8 Cir., 182 F.2d 556, certiorari denied 340 U.S. 921, 71 S.Ct. 352; United States v. Sorrentino, 3 Cir., 175 F.2d 721, certiorari denied, 338 U.S. 868, 70 S.Ct. 143; and State ex rel. Shetsky v. Utecht, 228 Minn. 44, 36 N.W.2d 126, 6 A.L.R.2d 988.

On this point it remains for us to consider whether Rule 43 of the Federal Rules of Criminal Procedure requires a reversal of the judgment appealed from. It must be remembered that the appellants were present when arraigned; that they were represented throughout the proceedings in the district court and in this court by two able lawyers authorized to represent them at every stage of the proceedings; that the jury was impaneled (at the suggestion of their counsel), when appellants were voluntarily absent; that waiver of objection to the impaneling of the jury in their absence and acceptance of the jury so selected were in the presence of their counsel. It should be noted further that no objection was made in the trial court prior to the motion for a new trial to the impaneling of the jury in their absence. In other words, as said by the Supreme Court in Johnson v. United States, supra, it is now clear that the "point * * * is a 'mere afterthought.' "

■ We think that under the authorities cited above defendants in a criminal case charged with a felony and not a capital offense may under the circumstances of this

case waive objection to the impaneling of a jury in their absence.

Appellants complain further of certain rulings of the court at the trial of the case. The government was represented at the trial by Mr. Edward J. Tangney, Assistant United States Attorney, and Mr. Warren C. Schrempp and Mr. Philip Abboud appeared as counsel for the appellants. Two principal witnesses testified for the government, Patricia Colleen Sledge, the complaining witness, and Mr. Elmer Jacobsen, an F.B.I. agent who had investigated the charge against the appellants and interviewed each of them in the jail after their arrest before they had employed an attorney. Each of the appellants testified for the defense.

It is first contended that the court erred in the following ruling on the cross-examination of the appellant Benjamin Echert:

Mr. Tangney: "Q. As I recall your testimony in answer to questions by Mr. Abboud, it was to the effect that the statements which Mr. Jacobsen had testified to this morning that you made to him [at the jail], your testimony is that those statements were true. A. Yes * * *.

"Q. Did you make any other statements that morning that he did not tell us about this morning? A. No.

"Q. At the time of the interview with Mr. Jacobsen at the jail on September 3d * * * 1949, did you tell Mr. Jacobsen you had been arrested on the Mann Act charge of 1947?

Mr. Schrempp: "I move for a mistrial, Your Honor, * * *. This is an attempt to bring in something I know nothing about * * *. It is an attempt to put into evidence, evidence of some kind of an arrest * * *.

By the Court: " * * * Is this foundation for an impeaching question?

Mr. Tangney: "This is foundation for an impeaching question * * *.

By the Court: "Proceed.

Mr. Schrempp: "Let the record show the defendant further objects to the question as improper cross-examination.

By the Court: "Overruled * * *.

"A. Absolutely not."

The government in rebuttal then recalled Mr. Jacobsen, the F.B.I. agent.

Mr. Tangney: "Q. Directing your attention to the occasion when you interviewed Benny Echert in the Douglas County jail on September 3rd, 1950, I will ask you if in that interview, in response to questions by you, Benny Echert told you that he had been arrested on the Mann Act charge in 1947 in the state of Arkansas?

Mr. Schrempp: "At this time we interpose the same objection. Mr. Tangney knows the one question a prosecutor can ask; the one fact that can be brought out. If he wants to bring it out in the proper manner, we have no objection.

By the Court: "Overruled.

"Q. You may answer the question. A. Mr. Echert, on the occasion of the interview in the Douglas County jail, on the afternoon of September 3rd, 1949, was asked about his previous arrests. At that time he stated that in the winter of 1947–1948, about in the middle of that winter, he had been arrested at Magnolia, Arkansas, on a Mann Act charge. The arrest was verified.

Mr. Schrempp: "Now, Your Honor, I move for a mistrial for the reason that the prosecution has, by its own efforts, brought out an arrest of a defendant, Mr. Echert. We move for a mistrial on behalf of Mr. Echert in this case for the reason that the prosecution has brought out the fact of an arrest by their own evidence and has brought out a fact which would tend to prejudice this jury, or attempt to prejudice this jury against the defendant, Echert, on account of an arrest. I move for a mistrial at this time.

By the Court: "Overruled.

Recross Examination by Mr. Schrempp: "Q. Do you have any certified copies of any records of any court anywhere, Mr. Jacobsen, that show that any of these three defendants were ever convicted of a felony?

Mr. Tangney: "Just a minute. Object to that as not being proper cross-examination.

By the Court: "Sustained."

The appellants were then recalled and each one of them testified that he had never been convicted of a felony. After further colloquy between Mr. Schrempp and the court, Mr. Schrempp again moved for a mistrial "for the reason that the prosecution has only one question to ask that is fairly recognized by the rules of this Court, and that is, has he or has he not been convicted of a felony, and if they want to prove it, they haven't proved it by production of a certified copy."

By the Court: "You have made your record on that many times and I permitted it, and you have reiterated it many times. This is misconduct on your part. You have saved your record on that question. Take your seat and let's proceed."

The appellants contend that the court erred in his rulings. They rely on such decisions as Edwards v. United States, 8 Cir., 18 F.2d 402; Glover v. United States, 8 Cir., 147 F. 426, 429; Little v. United States, 8 Cir., 93 F.2d 401; Pittman v. United States, 8 Cir., 42 F.2d 793; and Gideon v. United States, 8 Cir., 52 F.2d 427.

In the Glover case, supra, this court said: "It is competent for the purpose of discrediting a witness to show that he has been convicted of a crime. The general rule is that the crime must rise to the dignity of a felony or petit larceny. (Citing authorities.) Whatever may be the limit in this respect, nothing short of a conviction of a crime is admissible for the purpose of impeachment. A mere accusation or indictment will not be admitted, for the reason that innocent men are often arrested charged with a criminal offense." Citing 1 Greenleaf on Evidence, 16th Ed. pp. 579, 580. In Pittman v. United States, supra, this court said: "Any person's reputation for good character might be destroyed by such cross-examination." [42 F.2d 797.] And the court further said: " * * * the statement to a witness that defendant has been previously arrested may tend * * * to prejudice the jury against defendant. * * * " And this court held that the trial court erred in permitting government counsel to go so far in cross-examination of the witness, "resulting in serious prejudice to appellant." In Gideon v. United States, supra, this court, quoting from

Harrold v. Territory of Oklahoma, 8 Cir., 169 F. 47, 51–52, said: "The party on whose behalf a witness is called has the right to restrict his cross-examination to the subjects of his direct examination, and a violation of this right is reversible error." [52 F.2d 430.] (Citing numerous authorities.)

The government does not contend that the cross-examination of the appellant Benjamin Echert and the rebuttal testimony of the F.B.I. agent referred to above were proper or that the rulings of the court were not erroneous. The contention is that such errors do not require reversal because on the whole record the judgment was right and that no "substantial right" of the appellant Echert was denied which prevented him from having a fair trial. To sustain this contention Rule 52 of the Federal Rules of Criminal Procedure is relied upon. Rule 52, entitled "Harmless Error and Plain Error" reads:

"(a) *Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

"(b) *Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

In the notes of the Advisory Committee to subdivision (a) it is said: "This rule is a restatement of existing law, 28 U.S.C.A. former § 391 (second sentence): 'On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties.' "

In Salerno v. United States, 8 Cir., 61 F.2d 419, 424, this court, in an opinion written by Judge Sanborn, said: "The general rule is that such improper cross-examination [similar to that complained of here] constitutes reversible error. (Citing authorities.) When, in the prosecution of a defendant, counsel for the government indulges in unfair and improper cross-examination, the only purpose of which is to degrade the defendant and to prejudice the

jury against him, the government, upon appeal, will not ordinarily be heard to say that the methods which were used did not have the effect which they were obviously intended to have." Applying 28 U.S.C.A. 391, supra, however, it was held that since the defendant volunteered that he had been arrested for carrying concealed weapons and by his evasive answers to questions which were proper led the court to err, and that his conviction was no doubt the result of the testimony of another witness, the error complained of was not prejudicial.

The test to be applied by an appellate court to determine whether an error of the trial court in the admission of improper evidence in a criminal trial affects the "substantial rights" of the defendant has been defined by the Supreme Court. In Weiler v. United States, 323 U.S. 606, 611, 65 S.Ct. 548, 551, 89 L.Ed. 495, the Court say: "We are not authorized to look at the printed record, resolve conflicting evidence, and reach the conclusion that the error was harmless because we think the defendant was guilty. That would be to substitute our judgment for that of the jury * * *." To the same effect, see Bihn v. United States, 328 U.S. 633, 638, 66 S.Ct. 1172, 90 L.Ed. 1485.

In Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557, the Court say: " * * * the question is, not were they [the jurors] right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting." To the same effect, see Krulewitch v. United States, 336 U.S. 440, 444, 69 S.Ct. 716, 93 L.Ed. 790.

The Court of Appeals for the Ninth Circuit in Sang Soon Sur v. United States, 167 F.2d 431, 432, said: " * * * it is inconsistent with our traditional conception of a fair trial to permit any information to go to a jury which might influence a jury to convict a defendant for any reason other than that he is guilty of the specific offense with which he is charged." See, also, United States v. Dressler, 7 Cir., 112 F.2d 972, 977, and Kempe v. United States, 8 Cir., 151 F. 2d 680, 687.

Applying these tests to the record before us, we think the errors complained of did prejudicially affect the substantial right of the appellant Benjamin John Echert to a fair trial. The court properly submitted to the jury only the question of whether the appellants "knowingly transported or caused to be transported in interstate commerce Patricia Colleen Sledge for the purpose of debauchery [omitting prostitution] and illicit sexual relations between the said Kenneth Warren Carr and the said Patricia Colleen Sledge." The evidence was in conflict upon this issue and not "overwhelming" either way. If the testimony of Sledge alone was believed by the jury it was sufficient to support the verdict, but the methods used by the Assistant United States attorney and the rulings of the court complained of obviously had the effect they were intended to have upon the jury's decision. Since the jury returned separate verdicts against each of the appellants it is evident they considered separately the case of each one of them.

The appellant Margaret Echert complains, also, of the rulings of the court on the cross-examination of her by the Assistant United States attorney in reference to her marriages. She testified in her own behalf, and in the course of her examination on direct she testified that she was the wife of appellant Benjamin Echert, and that she had been married to him about six months, and that she had known him prior to that time for about six months. Over repeated objection of her counsel she was asked and answered on cross:

"Q. Had you been married prior to the date you married Benny Echert? A. Yes.

"Q. How many times had you been married prior to marriage to Benny? A. Twice.

"Q. When was your first marriage? A. Four years ago * * *.

"Q. Where were you first married? A. Lubbock, Texas.

"Q. Did you ever live with the first husband you married. A. No, sir.

"Q. Were you divorced from him, or did he die? A. Divorced.

"Q. How long after the marriage were you divorced from him? A. Two months.

"Q. Then you married another man subsequently? A. Yes.

"Q. When did this second marriage of yours occur? A. I don't remember the exact date, but about two and a half years, I guess.

"Q. Two and one-half what? A. Years ago * * *.

"Q. Where did that marriage take place? A. Lubbock, Texas.

"Q. Did you live with the second husband? A. Yes.

"Q. For how long a period? A. Four months.

"Q. Were you divorced from him? A. Yes.

"Q. What did you do subsequent to the divorce from your second husband? Did you have to make your own way? A. No. I stayed with my mother and dad."

Obviously this cross-examination was for the purpose of discrediting the appellant Margaret Echert. It was not proper cross-examination, and the objections to it should have been sustained. See Gideon v. United States, 8 Cir., 52 F.2d 427; Allen v. United States, 9 Cir., 115 F. 3, 11; Simon v. United States, 4 Cir., 123 F.2d 80, certiorari denied 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555.

Neither of the Echerts was on trial for matters complained of on cross-examination. Benjamin was not being tried for the acts for which he was arrested in 1947, and Margaret was not on trial because she had been divorced from two former husbands. It is an established rule that "Acts of misconduct, not resulting in conviction of a crime, are not the proper subject of cross-examination to impeach a witness." Lennon v. United States, 8 Cir., 20 F.2d 490, 494; Little v. United States, 8 Cir., 93 F. 2d 401; Simon v. United States, supra, 123 F.2d at page 85.

The appellants also complain that the court refused to require the F.B.I. agent Elmer Jacobsen to furnish copies of the reports made by him concerning the matters testified to by him; and, also, that the stenographer who reported the preliminary hearing before the Commissioner was not required to furnish a transcript of her stenographic notes taken at the hearing. Neither of these witnesses used the documents demanded to refresh their memories when on the witness stand. The court did not, therefore, err in either instance. Only when a witness uses a paper to refresh his memory when on the stand may production and inspection of a writing be demanded. Lennon v. United States, supra, 20 F.2d at pages 493, 494; United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416.

Separate judgments were entered against each of the appellants. For the foregoing reasons the judgments against Margaret Echert and Benjamin John Echert are reversed with directions to grant them a new trial. The judgment against Kenneth Warren Carr is affirmed.