UNITED STATES of America

v.

C. L. GUILD CONSTRUCTION CO., Inc., Charles L. Guild, alias William Unsworth, alias.

No. 6670.

United States District Court
D. Rhode Island.
April 24, 1961.

Joseph Mainelli, U. S. Atty., Samuel S. Tanzi, Asst. U. S. Atty., Providence, R. I., for plaintiff.

James A. Higgins, William C. Dorgan, of Higgins & Slattery, Charles A. Curran, Providence, R. I., for defendant.

DAY, District Judge.

On December 22, 1960, the defendants were found guilty by a jury on an indictment charging them with three violations of Title 18 U.S.C.A. § 641. Thereafter, within the time prescribed by the Federal Rules of Criminal Procedure, they filed a motion for judgment of acquittal under Rule 29 of said Rules of Criminal Procedure, 18 U.S.C.A., renewing a similar motion made by them at the close of all the evidence presented during their trial, and pursuant to said Rule 29, included therein a motion for a new trial under Rule 33 of said Rules.

While the motion for a new trial is based upon the usual grounds, defendants in their oral argument and brief filed in support thereof emphasize the following grounds as entitling them to a new trial, viz., (1) prejudicial cross-examination of the defendant, William Unsworth, (2) prejudicial error in calling one Valentino Tirocchi to the stand, (3) prejudicial cross-examination of the defendants' character witnesses, (4) failure to substantiate the charge, (5) erroneous exclusion of evidence, and (6) prejudicial argument by Government's counsel.

The defendant, William Unsworth, as did his co-defendant, Charles L. Guild, testified in his own defense. The record shows that as the District Attorney was concluding his lengthy cross-examination of Mr. Unsworth the following incident occurred:

"Q. Is it a fact, Mr. Unsworth, that you, along with Mr. Guild and the corporation, Tirocchi, Mr. Boisvert, several other defendants, are presently under other indictments outstanding in this court?

"Mr. Curran. Wait a minute, your Honor.

"Mr. Mainelli. I would like to argue the point, your Honor.

"Mr. Curran. I object, and I have a motion to make, your Honor.

"The Court. Take out the jury, Mr. Marshal."

From the foregoing it will be seen that counsel for the defendants made prompt and timely objection to the question which they now claim was prejudicial to them. The record further discloses that the jury was excused at 11:35 o'clock a. m.

In the absence of the jury, counsel for the Government argued vigorously that the question to which defendants objected was proper and cited three cases, two civil and one criminal, upon which he continues to rely, along with others, as authorities for the propriety of said question. No authorities holding to the contrary were then cited by counsel for the defendants who argued with equal vigor that said question was grossly prejudicial and that I should declare a mistrial. Having grave doubt as to the weight to be given to the authorities cited by the Government, I declared a recess in order to examine the authorities and invited counsel to submit whatever legal precedents they might find bearing upon the propriety of said question. During the noon recess I read whatever additional cases bearing upon the problem that I could find in the limited time available to me, as well as those submitted to me

by counsel for the defendants. As a result of this limited study, I concluded and ruled at 2:00 o'clock p. m. on the same day that the question was improper, should not have been asked, and sustained the defendants' objection. I also denied defendants' motion for a mistrial, stating that I believed that appropriate cautionary instructions to the jury that they must disregard the question would adequately protect the rights of the defendants.

The jury then returned to the court room. At that time I advised the jurors that I considered the question, which was then read to them, to be "highly improper" and admonished and instructed them to disregard it completely.

The defendants and the Government have filed briefs citing the respective legal authorities upon which they rely. I have considered and studied them and any others that I have been able to find.

My examination of these authorities convinces me that inquiries of an accused on cross-examination as to other arrests or indictments found against him are generally excluded as not competent to affect his credibility. See Annotations, 6 A.L.R. 1616; 25 A.L.R. 341; 103 A.L.R. 354; and 161 A.L.R. 233. And this is the well settled rule in the federal courts. Michelson v. United States, 1948, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168; Manley v. United States, 6 Cir., 1956, 238 F.2d 221; Echert v. United States, 8 Cir., 1951, 188 F.2d 336, 26 A.L.R.2d 752; Little v. United States, 8 Cir., 1937, 93 F.2d 401; Coulston v. United States, 10 Cir., 1931, 51 F.2d 178; Havener v. United States, 8 Cir., 1926, 15 F.2d 503; Coyne v. United States, 5 Cir., 1917, 246 F. 120; Glover v. United States, 8 Cir., 1906, 147 F. 426.

In Michelson v. United States, supra, in distinguishing the rule permitting cross-examination of a character witness for a defendant as to the arrest of the defendant for other offenses from the rule prohibiting cross-examination of a witness as to an arrest of the witness himself, stated at page 482 of 335 U.S., at pages 221–222 of 69 S.Ct.:

"Since the whole inquiry, as we have pointed out, is calculated to ascertain the general talk of people about defendant, rather than the witness' own knowledge of him, the form of inquiry, "Have you heard?" has general approval, and "Do you know?" is not allowed.

"A character witness may be cross-examined as to an arrest whether or not it culminated in a conviction, according to the overwhelming weight of authority. This rule is sometimes confused with that which prohibits cross-examination to credibility by asking a witness whether he himself has been arrested.

"Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness."

Similarly, in Manley v. United States, supra, the court at page 222 of 238 F.2d held:

"It is well settled that it is not permissible for the government to show that a defendant has been accused of, arrested for, or indicted for a crime. Only a previous conviction for crime is admissible, under appropriate circumstances.

"The United States Court of Appeals for the Eighth Circuit has ruled that acts of misconduct not resulting in conviction of a crime are not the proper subject of cross-examination to impeach a witness. Little v. United States, 8 Cir., 93 F.2d 401, 408; Echert v. United States, 8 Cir., 188 F.2d 336, 26 A. L.R.2d 752. Numerous other cases recognizing the same principle could be cited."

In Coyne v. United States, supra, where the defendant's conviction was set

aside, the court states the rule at page 121 of 246 F.:

" * * * The fact that an unproven charge has been made against one has no logical tendency to prove that he has been guilty of any offense, or to impair the credibility of his testimony. An indictment is a mere accusation, and raises no presumption of guilt. On the contrary, the indicted person is presumed to be innocent until his guilt is established, by legal evidence beyond a reasonable doubt, in a court of competent jurisdiction * * * It is not uncommon for entirely innocent persons to be indicted. It would be a gross injustice to permit the fact of such a making of a charge to be used to the prejudice of the person against whom the unproved charge is made. * * * "

This rule prohibiting cross-examination to credibility by asking an accused who testifies in his own defense whether he has been arrested or indicted is well stated in Glover v. United States, supra, at pages 429–430 of 147 F.:

" * * * It is competent for the purpose of discrediting a witness to show that he has been convicted of a crime. The general rule is that the crime must rise to the dignity of a felony or petit larceny (citing authorities). Whatever may be the limit in this respect, nothing short of a conviction of a crime is admissible for the purpose of impeachment. A mere accusation or indictment will not be admitted, for the reason that innocent men are often arrested charged with a criminal offense. 1 Greenleaf on Evidence (16th Ed.) 461b, 461c, pp. 579, 580. * * * "

■ The cases relied upon by the Government are either contrary to the overwhelming weight of authority or clearly distinguishable. For example, State v. Maslin, 1928, 195 N.C. 537, 143 S.E. 3, wherein the court permitted inquiry of a defendant as to whether he was then under indictment for other offenses is merely representative of the view followed by a meager minority of the jurisdictions of this country. Terminal Transport Co., Inc. v. Foster, 5 Cir., 1947, 164 F.2d 248, also cited by the Government, was a civil case and is readily distinguishable from the instant case. In United States v. Empire Packing Co., 7 Cir., 1949, 174 F.2d 16, it was held not error to permit cross-examination of one of the defendants as to a former conviction for income tax evasion, from which an appeal was then pending. In its opinion the court pointed out that trial below was before the court without a jury and if the reception of that evidence was error, it would appear to have been harmless. However, relying on the rule that an accused, taking the stand in his own defense, may be cross-examined regarding a prior conviction for a felony as affecting his credibility, the court held that until the judgment of the trial court was reversed the accused stands convicted and may be properly questioned regarding said conviction solely for the purposes of testing credibility. However, other United States Courts of Appeals have held to the contrary. See United States v. Levi, 7 Cir., 1949, 177 F.2d 827; Campbell v. United States, 1949, 85 U.S. App.D.C. 133, 176 F.2d 45. In any event the case is clearly distinguishable in that here there had been no conviction of the accused, Unsworth, who was being cross-examined. Similarly, the case of Commonwealth v. Mulroy, 1944, 154 Pa. Super. 410, 36 A.2d 337, upon which the Government also relies is clearly distinguishable in its facts. The remaining cases which the Government cites in support of its position are in my opinion inapposite and require no discussion. In short, I find, as I did during the trial, that said question was highly improper, and that the defendants' objection thereto was well taken and properly sustained by me.

■ There remains the problem of whether it can be fairly said that the cautionary instructions which I gave to the jury completely removed the effect of said question upon the minds of the jury.

While it is the general rule that cautionary instructions to a jury to disregard inadmissible evidence, which has been stricken from the record, or to disregard improper and prejudicial questions or arguments are deemed to cure such errors, there are exceptions to this rule. Throckmorton v. Holt, 1901, 180 U.S. 552, 21 S. Ct. 474, 45 L.Ed. 663; Waldron v. Waldron, 1895, 156 U.S. 361, 15 S.Ct. 383, 39 L.Ed. 453; Ippolito v. United States, 6 Cir., 1940, 108 F.2d 668; Holt v. United States, 10 Cir., 1937, 94 F.2d 90; Pierce v. United States, 6 Cir., 1936, 86 F.2d 949; James Stewart & Co. v. Newby, 4 Cir., 1920, 266 F. 287; Maytag v. Cummins, 8 Cir., 1919, 260 F. 74, 16 A.L.R. 712; Latham v. United States, 5 Cir., 1915, 226 F. 420, L.R.A.1916D, 1118.

In Throckmorton v. Holt, supra, the Supreme Court in reversing a verdict in a civil case, despite the trial court's instruction to the jury to disregard improper evidence, held at page 567 of 180 U.S., at page 480 of 21 S.Ct.:

" * * * But yet there may be instances where such a strong impression has been made upon the minds of the jury by illegal and improper testimony, that its subsequent withdrawal will not remove the effect caused by its admission, and in that case the general objection may avail on appeal or writ of error. * * * "

In Pierce v. United States, supra, the court reversed a conviction of the defendant despite the trial court's instruction to the jury to disregard improper acts by the district attorney, including suggestions that the defendant had been tried in other federal courts. In its opinion, at page 952 of 86 F.2d, the court said:

" * * * The inquiry, however, must always be as to whether in view of the whole record the impression conveyed to the minds of the jurors by irrelevant and prejudicial matter is such that the court may fairly say that it has not been successfully eradicated by the rulings of the trial judge, his admonition to counsel, and his instruction to the jurors

to disregard it. Sometimes a single misstep on the part of the prosecutor may be so destructive of the right of a defendant to a fair trial that reversal must follow, as in Pharr v. United States, 48 F.(2d) 767 (C.C.A.6) * * *."

■ Where it cannot be clearly said that a prejudicial statement or question did not have a substantial influence on the judgment of the jury, it is the duty of the Court to set aside a conviction and grant a new trial. Kotteakos v. United States, 1946, 328 U.S. 750, 66 S. Ct. 1239, 90 L.Ed. 1557; Mickler v. Fahs, 5 Cir., 1957, 243 F.2d 515; Nalls v. United States, 5 Cir., 1957, 240 F.2d 707; Helton v. United States, 5 Cir., 1955, 221 F.2d 338; Oliver v. United States, 6 Cir., 1953, 202 F.2d 521; United States v. Levi, 7 Cir., 1949, 177 F.2d 827; Holt v. United States, supra; Pierce v. United States, supra; Middleton v. United States, 8 Cir., 1931, 49 F.2d 538; C. M. Spring Drug Co. v. United States, 8 Cir., 1926, 12 F.2d 852.

In Kotteakos v. United States, supra, the Supreme Court said at page 764-765 of 328 U.S., at page 1248 of 66 S.Ct.

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. * * * But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

In Oliver v. United States, supra, the defendant was on trial for passing a forged check. He originally entered a plea of guilty, but before trial changed his plea to "not guilty". On cross-examination, the District Attorney asked him if he had originally pleaded guilty, and subsequently pleaded not guilty. In reversing his conviction and remanding the case to the district court for a new trial, the Court of Appeals said at pages 522–523 of 202 F.2d:

"The attorney for defendant objected and requested the court to instruct the jury to disregard the statement of the Government Attorney. This the court did, saying: 'I am going to instruct the jury to disregard that completely and not permit it to enter into their deliberations. Whatever happened before Judge Shelbourne, it is clear from the record that a plea of not guilty was ultimately entered by the court to the three counts in the indictment. This man is entitled, under the Constitution and the laws, to a trial by jury and he is now receiving it, and I want to hear no more about it.' The attorney for the defendant moved the court to discharge the jury on the ground that the statement of the District Attorney was so prejudicial that, notwithstanding the admonition of the court, the harmful impression could not be removed from the minds of the jury.

"We are in accord with the position taken by appellant's attorney. Neither the immediate admonition of the District Judge to the jury to disregard the prosecuting attorney's question nor the subsequent charge could, in our judgment, remove the indelibly impressed fact from the minds of the jurors that the defendant had, upon a previous occasion, pleaded guilty to the charge upon which he was being tried. * * *

* * * * * *

"Numerous cases where convictions have been reversed for prejudicial impressions conveyed to the jury by comments of United States Attorneys [for example, see Ross v. United States, 6 Cir., 180 F.2d 160] could be cited, but it seems unnecessary to cite them."

Similarly, in Holt v. United States, supra, the dying declaration of a co-conspirator was admitted in evidence, and then stricken from the record with instructions to the jury by the trial court to disregard it. In reversing the defendant's conviction, the Appellate Court said at page 94 of 94 F.2d:

"It is the general rule that error in the admission of evidence is cured by withdrawing the evidence from the consideration of the jury and instructing the jury to disregard it.

"However, where the character of the evidence is such that it is likely to create so strong an impression on the minds of the jurors to the prejudice of the defendant, that they will be unable to cast it aside in the consideration of the case, a mistrial should be ordered.

* * * * * *

"We are of the opinion that the instruction of the court to the jury to disregard the statement did not cure the error in its admission, and that the motion for a mistrial should have been granted."

In Middleton v. United States, supra, the Court stated at page 540 of 49 F.2d:

"Appellant was a witness on his own behalf, and on cross-examination the prosecuting attorney asked him if he had not been convicted of certain misdemeanors. The appellant's objection to this line of testimony was overruled, and the appellant answered that he had been convicted in the United States court in 1920, 1925, and 1928 on charges of the possession of liquor, and he admitted that he had been fined because of such convictions. The court afterwards on his own motion withdrew this testimony and instructed the jury to disregard it, so far as possible, and again in the final in-

structions to the jury emphatically told them to disregard the testimony. Under the settled rules of this court, the admission of this testimony must be regarded as erroneous, because the questions were not limited to convictions for felony, infamous crimes, or crimes involving moral turpitude. A consideration of all of the evidence leads to the conclusion that the prejudice against the defendant was not removed by the laudable endeavor of the court to withdraw the evidence, or by the instructions that it be disregarded, Haussener v. United States (C.C.A.) 4 F.(2d) 884, 887; Lawrence v. United States (C.C.A.) 18 F.(2d) 407; Jianole v. United States (C.C.A.) 299 F. 496, 499; Neal v. United States (C.C.A.) 1 F.(2d) 637, 639; Pittman v. United States (C. C.A.) 42 F.(2d) 793, 795; and this error is sufficient to require a reversal of the conviction of appellant."

Without reviewing the evidence in detail, it will suffice to say that there were sharp and decided conflicts in the testimony as to the existence of knowledge by the defendants that said surplus property had been embezzled, stolen or purloined from the United States. For the defense, Messrs. Guild, Unsworth and Vaughn testified as to the circumstances under which said property was acquired, and as to prior business dealings by them with Mr. Tirocchi, who, they said, they had always found to be honest and reliable. They denied having any knowledge that said property had been embezzled, stolen or purloined. The existence of such guilty knowledge on the part of Messrs. Guild and Unsworth was the crucial element in this case, because the receipt of said property was conceded by the defendants.

■ The harmful and prejudicial effect of the question asked by the District Attorney must be evaluated in the context of the "whole case and its particular circumstances", Waldron v. Waldron, supra [156 U.S. 361, 15 S.

Ct. 389]. This question improperly directed the attention of the jurors to Mr. Boisvert who had, only a few days earlier, testified for the Government, and had told the jurors that he had pleaded guilty to charges involving surplus property at Davisville, Rhode Island, where he had been employed as a disposal officer in the sale of surplus property, for the receipt of some of which the defendants were on trial. He also had told the jurors that he had manipulated the records pertaining to the property received by the defendants. Clearly the question asked here, though unanswered, which tied the defendants to him as co-defendants in other indictments "outstanding in this Court" could not have failed to make a serious impression upon the minds of the jurors.

In addition, in his opening statement to the jury the District Attorney had said, "We intend to show you that a person by the name of 'Val' Tirocchi, who was known * * * to both Mr. Guild and Mr. Unsworth, had approached them and that he had told them" in effect that he had certain connections with Mr. Boisvert, "that Mr. Tirocchi had told Mr. Guild and Mr. Unsworth, who were bidding in behalf of the corporation, that because of this connection he had with the contracting officer at Davisville (Mr. Boisvert) he could get certain property in which the C. L. Guild Construction Co., Inc. and Mr. Guild and Mr. Unsworth were interested, at a lesser rate than they would have to pay through ordinary channels." He also stated that "We will show you that as a result of a contact made by [sic] Mr. Boisvert and Mr. Tirocchi, Mr. Boisvert falsified certain records with respect to bids which were submitted on behalf of the C. L. Guild Construction Co., Inc.", and that the corporate defendant received the property for which it had bid. Later, during the presentation of the Government's case, after Mr. Boisvert had testified, "Val" Tirocchi, so-called, was called to the witness stand by the Government. He was asked a series of penetrating questions relating to his acquaintance with Messrs.

Guild and Unsworth, and relating to his dealings with them and with Mr. Boisvert in relation to any bids submitted by C. L. Guild Construction Co., Inc. for the purchase of surplus property at Davisville. He refused to answer each of these questions, invoking his privilege against self-incrimination. In my opinion the question, linking these three defendants with the admittedly guilty Mr. Boisvert, the unwilling witness Mr. Tirocchi, and several unnamed other defendants, as defendants under other indictments outstanding in this Court implied to the jury the existence of a common enterprise for criminal purposes between all those named in the question, and prejudiced the defendants. The conclusion is inescapable that said question prejudicially implied the guilt of the defendants by their association with others, one of whom admits his guilt, and another of whom, the person from whom the defendants received the property involved herein, declines to testify on the ground that answers to questions relating to said property might incriminate him.

After a careful consideration of all the evidence in this case, and an evaluation of the effect of said question in the context of the particular circumstances of this case, I do not have the conviction that said question, as framed, did not substantially influence the jury, despite my instructions. I am left in grave doubt and must therefore grant the defendants' motion for a new trial.

My conclusion in this regard makes it unnecessary for me to consider the remaining alleged errors asserted by the defendants in support of their motion for a new trial. If, in fact, such errors did occur and if they were of such a character as to warrant a new trial, it is to be expected that they will be avoided during a second trial of this indictment.

The defendants' motion for a judgment of acquittal requires no discussion. It is, in my judgment, clearly without merit.

In conclusion, the defendants' motion for judgment of acquittal is denied; their motion for a new trial is granted.